# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARNOLD LEVINE and ALLEN S. POPPER,<br><br>Plaintiffs,<br><br>v.<br><br>ASSOCIATION OF LEGAL AID ATTORNEYS, UAW LOCAL 2325; LEGAL AID SOCIETY; and the CITY OF NEW YORK,<br><br>Defendants. | No.<br><br><br><br>**Complaint** |

1. The First Amendment prohibits the government from compelling a person to subsidize a union's speech unless that person affirmatively consents. *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018). This principle applies both in the context of the government's own employees, *id.*, and where the government funds, through a state program, individuals employed to provide service to other private individuals, *Harris v. Quinn*, 573 U.S. 616, 656 (2014).

2. In this case, Plaintiffs are public defenders in New York City. Although Plaintiffs are employed by Defendant Legal Aid Society (LAS), through a contract between Defendant City of New York and LAS, their sole responsibility is to represent indigent criminal defendants in the City. The City is constitutionally required to provide such criminal defense and responsible by state law to fund that criminal defense, which it does, in part, through contracting with LAS.

3. LAS has a collective bargaining agreement with Defendant Association of Legal Aid Attorneys (ALAA), UAW Local 2325, which requires all LAS's attorneys, including Plaintiffs, to pay dues or the equivalent amount to ALAA.

1

4. Plaintiffs, who are Jewish, do not wish to pay money to ALAA because they object to positions and resolutions adopted by ALAA that Plaintiffs find to be antisemitic.

5. By contracting with LAS—which has a collective bargaining agreement with ALAA requiring its employees to pay money to the union—to provide attorneys who provide a core government function (criminal defense to the indigent), the City effectively requires Plaintiffs to pay money to a union without their consent—something it could not constitutionally do directly.

6. This arrangement violates Plaintiffs' First Amendment rights. Therefore, Plaintiffs bring this case under 42 U.S.C § 1983 and 28 U.S.C. § 2201(a) seeking declaratory and injunctive relief.

## PARTIES

7. Plaintiff Arnold Levine is a citizen of the State of New York and is employed by Defendant Legal Aid Society as a staff attorney in the Homicide Defense Task Force of the Criminal Defense Practice, where he represents indigent criminal defendants in for Defendant City of New York in all five boroughs.

8. Plaintiff Allen S. Popper is a citizen of the State of New York and is employed by Defendant Legal Aid Society as a staff attorney in the Criminal Defense Practice, where he represents indigent criminal defendants in Queens County for Defendant City of New York.

9. Defendant Association of Legal Aid Attorneys (ALAA), UAW Local 2325 is a labor union that represents over 2,700 public-interest attorneys and advocates in the New York City Metro Area, including Plaintiffs. Its headquarters is at 50 Broadway, Suite 1600, New York, NY 10004.

10. Defendant the Legal Aid Society (LAS ) is a not-for-profit 501(c)(3) organization, headquartered at 199 Water Street, New York, NY 10038, that among

other things, provides attorneys, including Plaintiffs, who serve as public defenders in the City of New York financed through contracts with the City.

11. Defendant City of New York is a city in the State of New York that must provide and fund criminal defense services to the indigent.

## JURISDICTION AND VENUE

12. This case raises claims under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

13. Venue is proper because a substantial portion of the events giving rise to the claims occurred in the Southern District of New York. 28 U.S.C. § 1391(b)(2).

## FACTS

14. Plaintiff Arnold Levine represents indigent criminal defendants in throughout New York City for Defendant City of New York.

15. Plaintiff Allen S. Popper represents indigent criminal defendants in Queens County for Defendant City of New York.

16. Both Plaintiffs are employed by Defendant Legal Aid Society as staff attorneys, but through contracts between Defendant City of New York and LAS, their sole responsibility is to provide legal representation to indigent criminal defendants in the City, and their compensation is entirely government funded.

17. The City is required, both under the United States Constitution and the New York Constitution, to provide counsel to criminal defendants who cannot afford counsel. *See Gideon v. Wainwright*, 372 U.S. 335, 344 (1963); *People v. Witenski*, 15 N.Y.2d 392 (1965). The City is responsible, by state law, to fund legal representation to indigent criminal defendants.

18. The City meets its constitutional obligations to provide counsel to criminal defendants who cannot afford counsel in two ways: First, it contracts with

organizations like LAS to provide criminal defense lawyers. Of these institutional public defenders, LAS is the largest. Second, the City hires private attorneys who agree to take case assignments and get paid an hourly rate by the City, otherwise known as the assigned counsel plan or the 18-b Panel (based on section 18-b of New York's County Law).

19. LAS's Criminal Defense Practice exists entirely to provide criminal defense for the City. LAS's criminal defense attorneys represent no clients other than criminal defendants for whom LAS provides representation to satisfy the City's constitutional obligation to provide criminal defense to the indigent.

20. LAS's Criminal Defense Practice, to which Plaintiffs are a part, is entirely government funded, predominated by the City, but also by the State of New York. Thus, Plaintiffs' pay and benefits come entirely from government funding. Further, through its contracts with LAS for the Criminal Defense Practice, the City attaches conditions that, at least in part, exert control over how LAS spends funds received by the City, including, for example, approving bonuses.

21. Plaintiffs, and all LAS staff attorneys, are required to pay money to Defendant Association of Legal Aid Attorneys (ALAA), UAW Local 2325 as a condition of their employment. LAS has a collective bargaining agreement with ALAA, which provides that if any LAS Staff Attorney "fails to pay such dues, fees, or interest" as the agreement requires, then "[u]pon the Union's request, the [Legal Aid] Society will discharge" that employee.

22. Although ALAA collectively bargains with LAS, the amount of pay and benefits for attorneys in the Criminal Defense Practice, like Plaintiffs, is based entirely on how much money the City and State have budgeted for criminal defense to pay LAS.

23. On July 25, 2022, ALAA passed a resolution "in support of Palestinian liberation from Israeli apartheid" that called on "UAW International to divest itself from any and all Israel bonds."[1]

24. On December 19, 2023, ALAA passed a resolution stating that "Israel has, since the violent tragedy on October 7, 2023, increasingly espoused genocidal rhetoric against all Palestinians," accusing Israel of "ethnic cleansing, and genocide," and calling "for an end to Israeli apartheid and the occupation and blockade of Palestinian land, sea, and air by Israeli military forces."[2]

25. Plaintiffs, who are Jewish, object to these resolutions passed by ALAA, which Plaintiffs find to be antisemitic. Moreover, Plaintiffs do not wish to subsidize such speech with their dues.

26. Plaintiffs wish to stop paying dues or agency fees to ALAA that would subsidize speech that they disagree with.

27. Plaintiff Levine contacted ALAA seeking to stop union dues from being taken from his paychecks. On October 25, 2023, ALAA sent Mr. Levine a letter stating that he was not required to be a union member, but he was required to pay agency fees as a nonmember, "which are equivalent in amount to union dues." The letter further stated that "[a]s a condition of employment at The Legal Aid Society, you must either pay union dues or agency fees in order to continue working at LAS." Exhibit A.

28. ALAA would not allow Mr. Levine to stop paying money to the union because, it asserted, "*Janus* does not apply as The Legal Aid Society is not a public sector employer." Ex. A.

---

[1] https://www.alaa.org/media-releases/resolution-on-divestment-from-israel-bonds-and-on-transparency-in-investmentsfunded-through-union-membership-dues

[2] https://www.alaa.org/media-releases/resolution-calling-for-a-ceasefire-in-gaza-an-end-to-the-israeli-occupation-of-palestine-and-support-for-workers-political-speech

29.     The National Labor Relations Act of 1935, 29 U.S.C. § 158(a)(3), permits a private-sector employer and a union to enter into an agency-shop agreement requiring employees in the bargaining unit to pay union dues or agency fees as a condition of continued employment, regardless of whether the employees are union members. The Act further provides that a state or territory may prohibit agency-shop agreements. 29 U.S.C. § 164(b). Although more than half of the states have adopted such right-to-work laws, New York State is not one of them.

30.     Thus, New York State permits private-sector employers and unions to enter into agreements requiring employees to pay agency fees to the union.

31.     Nonetheless, the First Amendment prohibits a government from compelling the subsidization of private speech. *Janus*, 138 S. Ct. at 2464.

## CAUSE OF ACTION

### The First Amendment prohibits Defendants from withholding union dues or fees from Plaintiffs without their consent.

32.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

33.     The First Amendment prohibits the government from compelling a person to subsidize a union's speech unless the employee affirmatively consents. *Janus*, 138 S. Ct. at 2486. "Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." *Id*.

34.     Plaintiffs provide criminal defense representation to the indigent that the City is constitutionally required to provide and by state law responsible to fund. ALAA insists that because Plaintiffs are employees of LAS, the requirement that

6

they pay money to ALAA as a condition of their employment is not prohibited by the First Amendment under *Janus*.

35. If Plaintiffs were directly employed by the City of New York to provide the exact same legal services they provide to criminal defendants for the exact same compensation, however, it would be beyond dispute that they could not be compelled to join or pay any money to a union. *See Janus*, 138 S. Ct. at 2486.

36. But the First Amendment's prohibition on the government forcing workers to pay a union is not limited only to government employees. "[T]he First Amendment's meaning does not turn on state-law labels," and what is significant is "the substance of their relationship." *Harris*, 573 U.S. at 641, n.10.

37. In *Harris*, personal assistants, who provided in-home services to individuals whose conditions would otherwise require institutionalization and received funds through the state-run Medicaid program, were deemed employees by the state only for purposes of union representation. The Supreme Court held that these personal assistants could not be compelled by the state to pay money to unions. *Harris*, 573 U.S. at 656.

38. In this case, the circumstances show that Plaintiffs are compelled by Defendants to pay ALAA dues or agency fees in order to provide criminal defense representation to the indigent in the city.

39. The City has entered into contracts with LAS requiring LAS to provide criminal defense attorneys in order for the City to satisfy its constitutional obligation to provide criminal defendants with an attorney who could not otherwise afford one.

40. In entering into these contracts, the City was, or should have been, aware that LAS has a collective bargaining agreement with ALAA, requiring the employees of LAS, including employees who solely provide criminal defense representation for the City, to pay money to ALAA as a condition of employment.

41. Further, the City knew, or should have known, that federal law allows private employers to require their employees to pay union dues as a condition of employment and that the State of New York does not prohibit such agency-shop agreement, as other states with right-to-work laws do.

42. Therefore, by entering into its contracts with LAS in order to provide a core government function (criminal defense representation to indigent), the City knew that those criminal defense attorneys would be required to pay money to ALAA as a condition of providing criminal defense representation for the City.

43. Here, in substance, Defendants' hiring of Plaintiffs through LAS, which required them to be part of ALAA, constitutes state action.

44. Plaintiffs have not provided affirmative consent to pay the union because they were never given a choice but to pay money to the union in order to provide criminal defense representation.

45. By requiring Plaintiffs to pay dues or fees to ALAA as a condition of their employment, Defendants are violating Plaintiffs' First Amendment rights to free speech and freedom of association under *Janus* and *Harris*.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

 a. Declare that compelling Plaintiffs to pay money to a union as a condition of their employment as public defenders violates their First Amendment rights to freedom of speech and freedom of association;

 b. Enjoin Defendants from requiring Plaintiffs to pay dues, agency fees, or other money to the union as a condition of their employment to solely provide criminal defense representation to indigent defendants for the City of New York;

  c. Award damages against ALAA for all union dues collected from Plaintiffs;

  d. Award Plaintiffs costs and attorneys' fees under 42 U.S.C. § 1988; and

  e. Award Plaintiffs any further relief to which they may be entitled and such other relief as this Court may deem just and proper.

Dated: April 11, 2024    Respectfully submitted,

    /s/ Dean McGee

    Dean McGee
    Jeffrey M. Schwab (IL Bar. No. 6290710)*
    James J. McQuaid (IL. Bar. No. 6321108)*
    Liberty Justice Center
    440 N. Wells Street, Suite 200
    Chicago, Illinois 60654
    Telephone: 312-637-2280
    dmcgee@libertyjusticecenter.org
    jschwab@libertyjusticecenter.org
    jmcquaid@libertyjusticecenter.org

*Attorneys for Plaintiff*

*motions for admission pro hac vice to be submitted