## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARNOLD LEVINE and ALLEN S. POPPER, <br><br> Plaintiffs, <br><br> v. <br><br> ASSOCIATION OF LEGAL AID ATTORNEYS, UAW LOCAL 2325; LEGAL AID SOCIETY; AND THE CITY OF NEW YORK, <br><br> Defendants. | Case No. 1:24-cv-02733-PKC |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 3

    A.   The Parties ..................................................................................................................... 3

    B.   The NYC Contract ......................................................................................................... 3

    C.   The Collective Bargaining Agreement ........................................................................... 4

    D.   This Litigation ................................................................................................................ 5

LEGAL STANDARD ............................................................................................................... 6

ARGUMENT ............................................................................................................................ 6

I.     PLAINTIFFS' SECTION 1983 CLAIM FAILS FOR LACK OF STATE ACTION ............ 6

    A.   Neither LAS nor ALAA Performs an Exclusive Public Function ...................................... 7

    B.   The City Did Not Compel LAS or ALAA to Enter Into or Enforce the Union Security
         Clause ............................................................................................................................ 9

    C.   The City Did Not Act Jointly with ALAA or LAS ......................................................... 12

    D.   Plaintiffs' Cases Are Inapposite ................................................................................... 12

CONCLUSION ........................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970)...................................................................................................7

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999)......................................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................6

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..........................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................6

*Blum v. Yaretsky*,
    457 U.S. 991 (1982)..................................................................................................10

*Chambers v. Time Warner*,
    282 F.3d 147 (2d Cir. 2002)........................................................................................3

*Ciambriello v. County of Nassau*,
    292 F.3d 307 (2d Cir. 2002)....................................................................................6, 7

*Commc'ns Workers of Am. v. Beck*,
    487 U.S. 735 (1988)....................................................................................................5

*Graseck v. Mauceri*,
    582 F.2d 203 (2d Cir. 1978)..............................................................................7, 8, 11

*Grogan v. Blooming Grove Volunteer Ambulance Corps*,
    768 F.3d 259 (2d Cir. 2014)......................................................................................12

*Hallinan v. Fraternal Order of Police of Chicago Lodge 7*,
    570 F.3d 811 (7th Cir. 2009) ....................................................................................10

*Harris v. Quinn*,
    573 U.S. 616 (2014)............................................................................................12, 13

*Heineke v. Santa Clara Univ.*,
    965 F.3d 1009 (9th Cir. 2020) ....................................................................................9

*Hickman v. Legal Aid Soc'y,*
    2020 WL 4549207 (S.D.N.Y. June 26, 2020) ........................................................8

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,*
    62 F.3d 69 (2d Cir. 1995) ...........................................................................................3

*Janus v. AFSCME, Council 31,*
    585 U.S. 878 (2018) .............................................................................................12, 13

*Lefcourt v. Legal Aid Soc.,*
    445 F.2d 1150 (2d Cir. 1971) ..............................................................................8, 9, 11

*Manhattan Cmty. Access Corp. v. Halleck,*
    587 U.S. 802 (2019) ...........................................................................................2, 7, 9

*Neustein v. Orbach,*
    732 F. Supp. 333 (E.D.N.Y. 1990) ..............................................................................8

*Polk v. Lewis,*
    499 F. Supp. 302 (S.D.N.Y. 1980) ..............................................................................8

*Powe v. Miles,*
    407 F.2d 73 (2d Cir. 1968) ...................................................................................11, 12

*Rodriguez v. Weprin,*
    116 F.3d 62 (2d Cir. 1997) .........................................................................................8

*Roffman v. Knickerbocker Plaza Assocs.,*
    2008 WL 919613 (S.D.N.Y. Mar. 31, 2008) .............................................................9

*Schnabel v. Abramson,*
    232 F.3d 83 (2d Cir. 2000) ....................................................................................8, 11

*Spear v. Town of West Hartford,*
    954 F.2d 63 (2d Cir. 1992) .........................................................................................7

*Sybalski v. Indep. Grp. Home Living Program, Inc.,*
    546 F.3d 255 (2d Cir. 2008) ...............................................................................10, 12

*United States v. Whitten,*
    610 F.3d 168 (2d Cir. 2010) ......................................................................................12

*Velasquez v. City of New York Dep't of Buildings,*
    2020 WL 2614826 (S.D.N.Y. May 22, 2020) ...........................................................6

*Williams v. Jurow,*
    2007 WL 5463418 (S.D.N.Y. June 29, 2007) ...........................................................8

**Statutes and Rules**

42 U.S.C. § 1983.................................................................................................1, 6, 7, 8

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 6

Defendants Legal Aid Society ("Legal Aid" or "LAS"), Association of Legal Aid Attorneys, UAW Local 2325 ("ALAA"), and the City of New York ("NYC" or the "City") respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint (ECF 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In this action under 42 U.S.C. § 1983, Plaintiffs allege that Defendants violated their First Amendment rights because they—like every other LAS staff attorney—were required to pay either union membership dues or agency fees to ALAA under the Collective Bargaining Agreement, negotiated between ALAA and LAS. Plaintiffs concede that they were employed by LAS (not the City) (compl. ¶2), that both LAS and ALAA are private entities (*id*. ¶¶9-10), that agency-shop agreements between private parties are lawful under both federal and state law (*id*. ¶¶29-30), and, implicitly, that the City had no role in the creation, negotiation, or enforcement of the Collective Bargaining Agreement or any of its terms (*id*. ¶40). Nonetheless, Plaintiffs claim that each Defendant is responsible for the alleged violation of their First Amendment rights because the City is required by law to provide criminal defense services to the indigent and pays LAS to perform that work; the contract between LAS and the City allegedly contains conditions that allow the City to exert "control" over how LAS spends those funds; and the City "was, or should have been, aware" of the Collective Bargaining Agreement and the Union Security Clause it contains. *Id*. ¶¶20, 39-42. Neither these allegations nor Plaintiffs' tortured legal theory are enough to make either LAS or ALAA a "state actor" or render the City responsible for the Collective Bargaining Agreement between LAS and ALAA.

Under Supreme Court precedent, a private entity "can qualify as a state actor" if it a) "performs a traditional, exclusive public function," b) is compelled by the government to "take

a particular action," or c) the "government acts jointly with the private entity." *Manhattan Cmty.
Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). None of these circumstances are plausibly
alleged in the Complaint.

*First*, neither LAS nor ALAA provides an exclusive public function. As the Supreme Court
has held, the fact that the government contracts with, funds, or subsidizes a private entity does not
alone convert it into a state actor. *Halleck*, 587 U.S. at 814 (2019) (citations omitted). The private
entity must perform a "traditional, exclusive public function." *Id.* at 809. Representing "indigent
criminal defendants" is not one of those functions. *Id.* at 810. The mere fact that LAS contracts
with the City to provide criminal defense services to indigent clients is therefore not enough to
transform it into a state actor. There are no allegations in the Complaint that so much as suggest
that ALAA performs any public function or that it is anything but a private entity.

*Second*, the Complaint does not and cannot ever allege any facts to support the notion that
the City compelled LAS or ALAA to enter into the Collective Bargaining Agreement or enforce
the Union Security Clause. Plaintiffs' allegation that the City "knew" about LAS' Collective
Bargaining Agreement with ALAA (compl. ¶41) does not suffice. Nor is it enough to allege that
the City's contract with LAS imposes certain "conditions" affecting how LAS spends funds
received from the City (*id*. ¶20), because those alleged conditions do not implicate the City in LAS'
employment practices generally, let alone in the specific conduct Plaintiffs challenge. *See Halleck*,
587 U.S. at 814 (the fact that government contracts with, funds, or subsidizes a private entity does
not "convert the private entity into a state actor—unless the private entity is performing a
traditional, exclusive public function").

*Third*, the Complaint does not and cannot ever allege that the City acted jointly with LAS
or ALAA to adopt or enforce the Union Security Clause, as required to show that they are state

actors.

The Complaint should therefore be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

### A.    *The Parties*

Plaintiffs Arnold Levine and Allen S. Popper are staff attorneys employed by Defendant Legal Aid as public defenders. Compl. ¶¶2, 14-15. They represent indigent criminal defendants as part of Legal Aid's Criminal Defense practice. *Id.*

Defendant Legal Aid is a private, not-for-profit 501(c)(3) organization, which provides a variety of legal services to indigent New Yorkers, including representation in both civil and criminal matters. *Id.* ¶10. Defendant ALAA is a labor union that represents thousands of public interest attorneys and advocates in New York City, including LAS staff attorneys such as Plaintiffs. ¶9. Defendant NYC is a city in the State of New York. *Id.* ¶11.

### B.    *The NYC Contract*

Under applicable federal and state law, New York City is required to provide criminal defense services to indigent defendants.[2] *Id.* ¶17. LAS is a primary provider of such criminal defense attorneys, together with several other private, not-for-profit unaffiliated organizations.[3]

---

[1] This section is drawn from: the non-conclusory allegations of the Complaint, which are accepted as true solely for purposes of this Motion; the documents that are incorporated by reference in and/or integral to the Complaint; and matters of public record of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *Chambers v. Time Warner*, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Defendants vigorously deny the claims asserted in the Complaint and specifically reserve the right to challenge the Complaint's allegations in the event the Court denies this Motion.

[2] The Complaint references the fact that New York State is also required by law to provide such defense services to indigent defendants (compl. ¶¶17, 22), but says nothing about the nature of any arrangement between Legal Aid and the State.

[3] Other such organizations include New York County Defender Services, Brooklyn Defenders, Bronx Defenders, Queens Defenders and Neighborhood Defender Services. *See How Public*

Legal Aid has entered into contracts with the City (the "NYC Contract")[4] to provide those services through its Criminal Defense practice, which is supported primarily, but not exclusively, by City government funding. *Id.* ¶¶2, 10, 20, 39.

Pursuant to the NYC Contract, Legal Aid is obligated to provide qualified criminal defense attorneys to represent indigent defendants in compliance with New York State's ethical rules, inform the City of any disciplinary complaints filed against a staff attorney, and undertake certain administrative obligations such as coordinating with the City on criminal case processing, maintaining a phone answering system, and providing shuttle services for attorneys and social workers. *See* Ex.1 (NYC Contract), App'x B, Scope of Services. Otherwise, the City has no role in LAS's employment decisions. *See id.*

### C.     *The Collective Bargaining Agreement*

ALAA is the exclusive bargaining representative of all attorneys and law graduates (collectively, "Staff Attorneys") employed by LAS. LAS and ALAA are parties to a Collective Bargaining Agreement (the "CBA") that governs certain terms and conditions of employment for LAS Staff Attorneys.[5] Compl. ¶3. The CBA does not require LAS Staff Attorneys to join ALAA as a condition of employment. Instead, the CBA contains a standard union security clause which provides that LAS Staff Attorneys must either: (i) become members of the union and pay union

---

Defenders Work in NYC, and Who's Eligible for a Free Attorney, The City (Jul. 22, 2024), https://www.thecity.nyc/2024/04/08/how-public-defenders-work-eligible-free-attorney/#h-what-public-defender-organizations-are-there-in-new-york-city-nbsp.

[4] True and correct excerpts of the NYC Contract are attached as Exhibit 1 to the Declaration of Abhinaya Swaminathan, dated September 20, 2024. The Court may consider the NYC Contract in resolving Defendants' motion to dismiss as it is incorporated by reference and/or integral to the Complaint. *See, e.g.*, compl. ¶¶ 16, 20, 39.

[5] A true and correct copy of the CBA is attached as Exhibit 2 to the Declaration of Abhinaya Swaminathan, dated September 20, 2024. The Court may consider the CBA in resolving Defendants' motion to dismiss as it is incorporated by reference and/or integral to the Complaint. *See, e.g.*, compl. ¶¶ 3, 5, 21.

dues; or (ii) pay service fees (also known as agency fees) to ALAA in lieu of membership dues (the "Union Security Clause").[6] LAS Staff Attorneys also have the right under federal law not to pay agency fees for ALAA activities not germane to collective bargaining. *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 762-763 (1988).[7]

### D.    *This Litigation*

Plaintiffs have objected to two resolutions ALAA has adopted relating to the situation in Gaza (the "Resolutions"), which Plaintiffs believe are antisemitic. *See* Compl. ¶¶23-25. The Complaint does not allege that the City or Legal Aid had any involvement with these Resolutions to which Plaintiffs object. Plaintiffs brought suit alleging that being required to pay *any* service fees—even those wholly unrelated to the Resolutions or other political activities of ALAA—violates their rights under the First Amendment.[8]

As Plaintiffs acknowledge, federal law allows unions and private employers to enter into collective bargaining agreements that require represented employees to pay union dues or agency fees as a condition of employment. *Id.* ¶41. Likewise, New York State law allows agency shop agreements such as the agreement at issue here. *Id.* According to Plaintiffs, however, Legal Aid and ALAA are "public" actors because LAS provides services to indigent criminal defendants that the City would otherwise be required to provide and because Legal Aid's Criminal Defense practice is, allegedly, entirely funded by the government and primarily by the City. *Id.* ¶¶17-20.

---

[6] *See* October 25, 2023 Letter from ALAA to Plaintiff Levine, annexed to the Complaint as Exhibit A. ECF 1-1 at 1.

[7] It is not clear from the Complaint whether Plaintiffs are members of the Union, but Plaintiffs admit that the Union informed Mr. Levine "that he was not required to be a union member" (compl. ¶27), and that agency fees are an available alternative to paying membership dues (*id.* ¶¶ 3, 26, 38).

[8] Plaintiffs could have taken advantage of their legal right to pay reduced agency fees as *Beck* objectors, ECF 1-1 at 1-2, but opted not to do so.

As a result, Plaintiffs claim that being required to "pay dues or fees to ALAA as a condition of their employment" violates their First Amendment rights. *Id*. ¶45.

On July 30, 2024, Defendants each submitted letters to the Court seeking leave to move to dismiss the Complaint, ECF Nos. 22-24, and Plaintiffs responded on August 2, 2024, ECF No. 25. On August 7, 2024, the Court issued an order staying the case and setting a briefing schedule on Defendants' joint motion. ECF No. 26.

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," so a complaint offering nothing more than "labels and conclusions" or a "formulaic recitation of the elements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although well-pleaded factual allegations are taken as true, "[a]llegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007). Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Velasquez v. City of New York Dep't of Buildings*, 2020 WL 2614826, at *2 (S.D.N.Y. May 22, 2020) (Castel, J.).

## ARGUMENT

## I.    PLAINTIFFS' SECTION 1983 CLAIM FAILS FOR LACK OF STATE ACTION

"In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). A private entity can qualify as a "state actor" only in a few "limited circumstances," such as "(i) when the private entity performs a traditional, exclusive

public function … (ii) when the government compels the private entity to take a particular action … or (iii) when the government acts jointly with the private entity….” *Halleck*, 587 U.S. at 809 (citations omitted). Mere state “involvement” in the challenged activities of a private actor is not enough; rather, there must be “a sufficiently close nexus between the State and the *challenged action* of the (private) entity so that the action of the latter may be fairly treated as that of State itself.” *Graseck v. Mauceri*, 582 F.2d 203, 209 (2d Cir. 1978) (quoting *Jackson v. Metropolitan Edison Co.*, 419 US 345, 351 (1974)) (emphasis added); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (the “allegedly unconstitutional conduct [must be] fairly attributable to the State.”). Similarly, to satisfy the “acting under color of state law” prong, “the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.” *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir. 1992). Put differently, a private actor acts under color of state law when the private actor “is a willful participant in joint activity with the State or its agents.” *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970). “A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim.” *Ciambriello*, 292 F.3d at 324.

Under these well-established standards, Plaintiffs’ claim fails as a matter of law because the Complaint does not adequately allege that LAS or ALAA is a state actor, that the City compelled LAS or ALAA to act, or that the City acted in concert with them to deprive Plaintiffs of their First Amendment rights.

### A.    *Neither LAS nor ALAA Performs an Exclusive Public Function*

Legal Aid is not a “state actor.” *Halleck*, 587 U.S. at 814-15 (private not-for-profit allegedly “designated” by city “to operate public access channels” was not state actor). Nor was LAS “acting under color of state law” when it contracted with the City to provide legal services to

indigent clients that the City otherwise "might have to assume." *Lefcourt v. Legal Aid Soc.*, 445 F.2d 1150, 1157 (2d Cir. 1971) ("Although [LAS] by contract has undertaken to make available to indigent defendants legal services which otherwise governmental agencies might have to assume, its history, constitution, bylaws, organization and management definitely establish that it is a private institution in [no] manner under State or City supervision or control. Its very independence from any such control is an assurance that those who receive the benefits of its services will obtain these services in accordance with the highest standards of the Bar."). As the Second Circuit recognized in *Lefcourt*, imposing constitutional obligations on private actors, such as LAS, who contract with state actors to fulfill the state's constitutional obligation to provide legal representation to indigent defendants "would be a highly unreasonable extension of the State action concept and § 1983 and would quite transcend their intended scope." *Id.* at 1157 n.10. The Second Circuit has consistently reaffirmed its holding in *Lefcourt*. *See Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[C]ourt appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"); *Graseck*, 582 F.2d at 208 (same for LAS of Suffolk County); *Schnabel v. Abramson*, 232 F.3d 83, 86-87 (2d Cir. 2000) (same for LAS of Orange County).[9]

Moreover, private contractors do not become state actors merely because their activities are funded by the state, even when the state is the exclusive source of their funding. As the Supreme Court has stated, the fact that the government "contracts with" or "funds or subsidizes" a private

---

[9] Numerous district courts in this Circuit have followed suit. *See, e.g.*, *Hickman v. Legal Aid Soc'y*, 2020 WL 4549207, at *4 (S.D.N.Y. June 26, 2020); *Polk v. Lewis*, 499 F. Supp. 302, 304 (S.D.N.Y. 1980); *Williams v. Jurow*, 2007 WL 5463418, at *12 (S.D.N.Y. June 29, 2007) (dismissing § 1983 claims "[b]ecause the Legal Aid Defendants were not public employees and were not acting under color of state law . . . ."); *Neustein v. Orbach*, 732 F. Supp. 333, 345 (E.D.N.Y. 1990) ("[Legal Aid] attorneys do not represent their clients under color of state law.").

entity "does not convert the private entity into a state actor," unless the private entity "is performing a traditional, exclusive public function." *Halleck*, 587 U.S. at 814 (gathering cases). In fact, "[v]ery few" functions qualify as the type of "traditional, exclusive public function" sufficient to implicate state action, and "representing indigent criminal defendants" is not one of them. *Id.* at 809-10. To the contrary, the city has historically contracted with private actors to provide such services. *See Lefcourt*, 445 F.2d at 1157 n.10. Accordingly, Plaintiffs' allegation that LAS is a state actor because its Criminal Defense practice is allegedly fully government funded (compl. ¶20), does not suffice. *See Heineke v. Santa Clara University*, 965 F.3d 1009, 1013 (9th Cir. 2020) (school was not a state actor even where "virtually all of the school's income [i]s derived from government funding"); *Roffman v. Knickerbocker Plaza Assocs.*, 2008 WL 919613, at *10 (S.D.N.Y. Mar. 31, 2008) (Castel, J.) ("Acts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.").

Plaintiffs' allegations regarding ALAA fare no better. ALAA, a labor union, is undisputedly a private entity. The Complaint does not allege that ALAA fulfills any public function, much less one that is traditional and exclusive. Indeed, ALAA's conduct in negotiating and enforcing the Union Security Clause cannot conceivably constitute any public function. *See Halleck*, 587 U.S. at 809.

**B.    *The City Did Not Compel LAS or ALAA to Enter Into or Enforce the Union Security Clause***

Plaintiffs' allegation that the City "was, or should have been, aware" that LAS had a CBA with ALAA requiring Staff Attorneys "to pay money to ALAA as a condition of employment" does not transform the Union Security Clause into a state action. Compl. ¶40. As the Supreme Court has stated, the state's "[m]ere approval of or acquiescence in the initiatives of a private party

is not sufficient to justify holding the [s]tate responsible for those initiatives." *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982). Rather the state must have "exercised coercive power or ha[ve] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1004.

Plaintiff does not allege that the City participated in or otherwise influenced any aspect of the collective bargaining between LAS and ALAA. Plaintiffs do not and cannot claim that the City required or otherwise obligated LAS or ALAA to agree to the CBA provision requiring Staff Attorneys to "pay money to ALAA as a condition of employment." *See Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257-258 (quoting *Schein v. Milford Hosp. Inc.*, 561 F.2d 427, 428 (2d Cir. 1977)) (state actor must have been "involved with the activity that caused the injury giving rise to the action").[10] Indeed, Plaintiffs plead no facts that show any City involvement in the adoption or enforcement of the Union Security Clause.

Plaintiffs' allegation that the City imposes "conditions" as part of the NYC Contract that, "at least in part, exert control over how [Legal Aid] spends funds received by [sic] the City" (compl ¶20), does not suffice. Whatever "control" the NYC Contract grants to the City falls far below what is necessary to establish that it (rather than Legal Aid) was Plaintiffs' employer. The NYC Contract does not deem Legal Aid Staff Attorneys to be City employees, nor does it empower the City to hire or fire Legal Aid attorneys, set their qualifications for or terms of employment (beyond bar membership), set their salaries or benefits, conduct performance reviews, determine eligibility

---

[10] Plaintiffs cite *Hallinan v. Fraternal Order of Police of Chicago Lodge 7* (Pls. Ltr. at 2), but there the court held that even a public sector police union did not act under color of state law when it expelled plaintiffs because "[d]ecisions about membership [were] between the Union and its police officer members," and could not be attributed to the state. 570 F.3d 811, 818-19 (7th Cir. 2009).

for promotion or demotion or resolve grievances.[11] Legal Aid attorneys do not need the City's approval before taking on a representation and the City does not supervise their conduct of their clients' defense. *See* NYC Contract, App'x B. Critically, the NYC Contract does not impose any conditions on Legal Aid's (or ALAA's) ability to enter into a collective bargaining agreement or otherwise control the terms of any agreement between those parties. Indeed, the opposite is true: Section 6.03 of the NYC Contract expressly states that the City is "[not] responsible [and] shall [not] be liable for any obligations contained" in any collective bargaining agreement entered into by Legal Aid. Plaintiffs' "control" arguments should therefore be rejected. *See Graseck*, 582 F.2d at 207 n.16, 209 n.22 (dismissal of LAS attorney was not state action given "absence of governmental participation, let alone 'substantial' participation, in [LAS's] general management and internal operations" including "hiring and firing of attorneys"); *Schnabel*, 232 F.3d at 87 (quoting *Graseck*, 582 F.2d at 208) (Legal Aid societies are not state actors for employment claims given the "lack of government control over or interference with" their employment decisions); *Lefcourt*, 445 F.2d at 1157 (dismissing claim by LAS staff attorney for unlawful termination, finding that he failed to establish that the City had any right to intervene in LAS's employment practices).

Likewise, although Plaintiffs allude to "*Defendants'* hiring of Plaintiffs" (compl. ¶ 43 (emphasis added)), that assertion is contradicted by the Complaint's earlier acknowledgement that "[b]oth Plaintiffs are employed *by Defendant Legal Aid Society*…." *Id*. ¶16 (emphasis added). Plaintiffs do not and cannot allege facts to show that the City was involved in hiring them or any

---

[11] Plaintiffs imply, without support, that the City imposes conditions regarding "approving bonuses" of LAS employees. Compl. ¶20. However, nothing in the NYC Contract empowers the City to set or approve bonuses for LAS employees. *See* Ex.1. Even if true, such allegation still fails to establish the requisite government control.

other LAS Staff Attorney. *See Powe v. Miles*, 407 F.2d 73, 81 (2d Cir. 1968) ("[T]he state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury"). That the City allegedly "exercise[s] some regulatory powers" over how Legal Aid spends and accounts for the funds provided by the City does not "implicate it generally" in Legal Aid's employment practices not addressed by the NYC Contract or in collectively bargained employment conditions. *Id.*; *see also Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 269 (2d Cir. 2014).[12]

**C.    *The City Did Not Act Jointly with ALAA or LAS***

The "entwinement" or "joint activity" test similarly requires Plaintiffs to plead "that the state was involved with the activity that caused the injury giving rise to the action." *Sybalski*, 546 F.3d at 257-258. Funding, auditing, and contracting with a private organization to provide services to the public does not make the government "sufficiently entwined with" the organization's management and personnel decisions, so as to convert that private organization's employment decisions into state action. *See Grogan*, 768 F.3d at 269. As noted above, Plaintiffs plead no facts to show any City involvement in the adoption or enforcement of the CBA's Union Security Clause and without such facts Plaintiffs cannot establish state action.

**D.    *Plaintiffs' Cases Are Inapposite***

Plaintiffs rely primarily upon two Supreme Court decisions—*Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018) and *Harris v. Quinn*, 573 U.S. 616, 625 (2014)—both of which are

---

[12] Plaintiffs' reliance on *United States v. Whitten* (Pls. Ltr. at 2) to argue that the City "may not do indirectly what it cannot do directly" is misplaced. *Whitten* held that the state could not indirectly penalize a capital murder defendant for exercising his right to a jury trial. 610 F.3d 168, 194-195 (2d Cir. 2010). It has no import here because Plaintiffs have not identified any conduct by the government with respect to the activities that actually caused Plaintiffs' alleged injury, *i.e.*, the terms of their employment by LAS and representation by the ALAA.

inapposite. Compl. ¶¶2, 35-37, 45.

*Janus* concerned the First Amendment rights of undisputedly public sector employees, which are not at issue here.[13] 585 U.S. 878. While *Harris* involved personal assistants employed through state contracts, that case is distinguishable because the personal assistants were employed pursuant to an Illinois statute that explicitly deemed them public employees "for the purposes of coverage under" Illinois law governing public sector collective bargaining agreements. *Harris*, 573 U.S. at 625. The Supreme Court held that, in that context, requiring the payment of agency fees from the personal assistants was unlawful, not because their employers contracted with the state, but because their status as public employees for collective bargaining purposes "sharply" limited the scope of collective bargaining benefits they could receive. *Id.* at 643, 649-50. That case has no application here because no statute provides that LAS employees are "public employees" for any purposes whatsoever. Indeed, the City has expressly disclaimed any responsibility for the terms of collective bargaining agreements entered into by Legal Aid. *See* NYC Contract, § 6.03.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that the Complaint should be dismissed in its entirety with prejudice.

Dated: September 20, 2024               Respectfully submitted,
      New York, New York

                                     FRESHFIELDS BRUCKHAUS DERINGER
                                     US LLP

                                     */s/Mary Eaton*
                                     Mary Eaton
                                     Abhinaya Swaminathan
                                     3 World Trade Center, 51st Floor
                                     175 Greenwich Street

---

[13] As established, *supra*, Plaintiffs admit they are employed by Legal Aid, a private not-for-profit 501(c)(3) corporation, (compl ¶41), and as such, are not public employees.

New York, NY 10007
Telephone: (212) 277-4000
mary.eaton@freshfields.com
abhinaya.swaminathan@freshfields.com

*Counsel for Defendant Legal Aid Society*

MURIEL GOODE-TRUFANT
ACTING CORPORATION COUNSEL FOR
THE CITY OF NEW YORK

*/s/Madeleine A. Knutson**
Madeleine A. Knutson
100 Church Street
Room 2-173
New York, NY 10007
Telephone: (212) 356-2445
mknutson@law.nyc.gov

*Counsel for Defendant City of New York*
* Signature used with permission pursuant to
S.D.N.Y. ECF Rule 8.5

LEVY RATNER, P.C.

*/s/Allyson L. Belovin**
Aleksandr L Felstiner
Allyson Leigh Belovin
Jessica Isa Apter
80 Eighth Avenue, Floor 8
New York, NY 10011
Telephone: (212) 627-8100
afelstiner@levyratner.com
abelovin@levyratner.com
japter@levyratner.com

*Counsel for Defendant Association of Legal
Aid Attorneys UAW Local 2325*
* Signature used with permission pursuant to
S.D.N.Y. ECF Rule 8.5