IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARNOLD LEVINE and ALLEN S. POPPER,<br><br>                    Plaintiffs,<br><br>v.<br><br>ASSOCIATION OF LEGAL AID ATTORNEYS,<br>UAW LOCAL 2325; LEGAL AID SOCIETY;<br>and the CITY OF NEW YORK,<br><br>                    Defendants. | Case No. 1:24-cv-02733-PKC |

**Plaintiffs' Response and Memorandum
of Law in Opposition to Defendants'
Motion to Dismiss the Complaint**

# Table of Contents

Preliminary Statement ................................................................................. 1

Legal Standard ............................................................................................ 2

Argument ..................................................................................................... 3

    I.    Plaintiffs may bring a § 1983 claim against a private party
        for an action that is fairly attributable to the state ................................... 4

    II.   Under the public function test, a function performed by a
        private entity that has been traditionally and exclusively
        reserved to the state constitutes state action ............................................. 6

    III.  State action exists in this case because the City satisfies its
        constitutional obligation to provide public defenders to
        indigent criminal defendants, an exclusive public function,
        through its contract with LAS ..................................................................... 9

Conclusion ................................................................................................... 15

# Table of Authorities

**Cases**

*Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir. 1985) ................... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 2, 3

*Branti v. Finkel*, 445 U.S. 507 (1980) ......................................................................... 11

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) ............... 4–5, 7, 8, 15

*Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991) ......................................... 3

*Evans v. Newton*, 382 U.S. 296 (1966) ......................................................................... 7

*Fabrikant v. French*, 691 F.3d 193 (2d Cir. 2012) ....................................................... 8

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) .................................................... 6, 9

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ................................................... 10–11, 12

*Graseck v. Mauceri*, 582 F.2d 203 (2d Cir. 1978) ..................................................... 14

*Halebian v. Berv*, 644 F.3d 122 (2nd Cir. 2011) ......................................................... 3

*Hallinan v. Fraternal Order of Police of Chicago Lodge 7*,
    570 F.3d 811 (7th Cir. 2009) ............................................................................. 3, 5

*Heffernan v. City of Paterson*, 578 U.S. 266 (2016) .................................................... 4

*Hickman v. Legal Aid Soc'y*, No. 19 Civ. 05294, 2020
    U.S. Dist. LEXIS 113283 (S.D.N.Y June 26, 2020) ............................................ 13

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) ......................................... 9

*Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018) ............................................ 1, 3

*Janusaitis v. Middlebury Volunteer Fire Department*,
    607 F.2d 17 (2d Cir. 1979) ...................................................................................... 8

*Lefcourt v. Legal Aid Society*, 445 F.2d 1150 (1971) .......................................... 12, 13

*Lindke v. Freed*, 601 U.S. 187 (2024) ..................................................................... 5, 15

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) .............................................. 4, 5

*Lynch v. City of New York*, 952 F.3d 67 (2nd Cir. 2020) .......................................... 2, 3

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019) ............................... 9

*Marsh v. Alabama*, 326 U.S. 501 (1946) ...................................................................... 6

*Neustein v. Orbach*, 732 F. Supp. 333 (E.D.N.Y. 1990) ............................................ 14

*People v. Witenski*, 15 N.Y.2d 392 (1965)................................................................... 12

*Perez v. Sugarman*, 499 F.2d 761 (2d Cir. 1974)........................................................ 8

*Polk v. Lewis*, 499 F. Supp. 302 (S.D.N.Y. 1980)....................................................... 13

*Polk County v. Dodson*, 454 U.S. 312 (1981) .............................................................. 11

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) ......................................................... 4, 6, 9

*Rodriguez v. Weprin*, 116 F.3d 62 (2d Cir. 1997) ...................................................... 13

*Smith v. Allwright*, 321 U.S. 649 (1944) .................................................................... 6

*Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000)................................................... 14

*Terry v. Adams*, 345 U.S. 461 (1953)...................................................................... 6, 7

*United States v. Classic*, 313 U.S. 299 (1941)............................................................. 8

*United States v. Price*, 383 U.S. 787 (1966) ............................................................... 5

*United States v. Whitten*, 610 F.3d 168 (2d Cir. 2010) .............................................. 1

*West v. Atkins*, 487 U.S. 42 (1988)............................................................................. 10

*Williams v. Jurow*, No. 05 Civ. 6949, 2007 U.S.
Dist. LEXIS 97494 (S.D.N.Y. June 29, 2007)....................................................... 13

## Statutes and Rules

42 U.S.C. § 1983 ........................................................................................................... 4

Fed. R. Civ. P. 12(b)(6).................................................................................................. 2

## Preliminary Statement

Plaintiffs Arnold Levine and Allen S. Popper are public defenders in New York City. Although they are employed by Defendant Legal Aid Society (LAS), through a contract between Defendant City of New York and LAS, their sole responsibility is to represent indigent criminal defendants in the City. The City is constitutionally required to provide criminal defense counsel to indigent defendants and responsible by state law to fund that criminal defense, which it does, in part, through contracting with LAS. In fact, Levine's and Popper's salaries are paid *entirely* by the City of New York.

As a condition of their employment as public defenders, Levine and Popper are required to pay dues (or an equivalent fee) to a union—Defendant Association of Legal Aid Attorneys ("ALAA"), which has a collective bargaining agreement with LAS. Levine and Popper object to this. They do not wish to pay money to ALAA because they are Jewish and object to positions and resolutions ALAA has adopted that they consider antisemitic.

It is undisputed that if Levine and Popper were directly employed by the City, they could not constitutionally be required to pay any money to a union without their consent. *See Janus v. AFSCME, Council 31*, 585 U.S. 878, 930 (2018). But "the government may not do indirectly what it cannot do directly." *United States v. Whitten*, 610 F.3d 168, 194 (2d Cir. 2010). Even though they are not directly employed by the City, the obligation that Plaintiffs pay ALAA as a condition of their position as public defenders violates their First Amendment rights.

Nonetheless, Defendants ALAA, LAS, and the City have moved to dismiss the Plaintiffs' complaint on the ground that there is no "state action" that could give rise to a First Amendment violation. That is incorrect: State action exists where a function provided by a private entity has been traditionally and exclusively reserved to the state, and the City's constitutional obligation to provide public defenders to indigent criminal defendants is such a function. Therefore, state action exists in this case. And the Court should deny the motion to dismiss.

## Legal Standard

A Rule 12(b)(6) motion to dismiss must be denied when the complaint contains sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In considering a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2nd Cir. 2020). "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Id*. Thus, a court may not dismiss a case under Rule 12(b)(6) because it disbelieves the complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The requirement that a claim be facially plausible "'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a

reasonable expectation that discovery will reveal evidence of illegal' conduct."
*Lynch*, 952 F.3d at 75 (quoting *Twombly*, 550 U.S. at 556). The court therefore does
not ordinarily look beyond the complaint and attached documents in deciding a
motion to dismiss. *Halebian v. Berv*, 644 F.3d 122, 130 (2nd Cir. 2011).

## Argument

Compelling a person to subsidize the speech of other private speakers
significantly impinges the First Amendment right to freedom of speech. *Janus v.
AFSCME, Council 31*, 585 U.S. 878, 893 (2018). The Supreme Court has held,
therefore, that under the First Amendment, government employees cannot be
compelled to pay money to a union as a condition of their employment. *Id*. at 930.
Thus, it cannot be disputed that if Plaintiffs were directly employed by the City,
they could not constitutionally be required to pay any money to a union as a
condition of their employment without their consent. *See id*. at 893.

Plaintiffs are employed by Defendant LAS, and, of course, recognize that
Defendants LAS and ALAA are private entities. But that "does not end the
matter . . . because the conduct of private actors, in some cases, can constitute
[governmental] action." *Hallinan v. Fraternal Order of Police of Chicago Lodge 7*,
570 F.3d 811, 815 (7th Cir. 2009); *see also Edmonson v. Leesville Concrete Co.*, 500
U.S. 614, 620 (1991) ("Although the conduct of private parties lies beyond the
Constitution's scope in most instances, governmental authority may dominate an
activity to such an extent that its participants must be deemed to act with the
authority of the government and, as a result, be subject to constitutional

3

constraints").

And that is the case here. Because the City's constitutional obligation to provide public defenders to indigent criminal defendants is a traditional and exclusive function of the state, the First Amendment prohibits Plaintiffs, though directly employed by LAS, from being compelled to pay money to ALAA as a condition of their role as public defenders in New York City.

## I.    Plaintiffs may bring a § 1983 claim against a private party for an action that is fairly attributable to the state.

Under 42 U.S.C. § 1983, individuals may seek redress for the deprivation of their constitutional rights, including the right to free speech protected by the First Amendment, by persons acting under color of state law. *Heffernan v. City of Paterson*, 578 U.S. 266, 271 (2016). Determining whether a person is subject to suit under § 1983 involves the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the state? *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). A successful § 1983 claim for deprivation of one's First Amendment rights requires that "the party charged with the [constitutional] deprivation . . . be a person who may fairly be said to be a state actor, either because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

In determining whether state action can be attributed to private actors, a court must consider the facts and circumstances before it. *Burton v. Wilmington Parking*

*Authority*, 365 U.S. 715, 722 (1961) ("Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."); *see also Lugar*, 457 U.S. at 939 (describing the question as a "fact-bound inquiry"); *Lindke v. Freed*, 601 U.S. 187, 197 (2024) ("[T]he state-action doctrine demands a fact-intensive inquiry.") The Court has identified numerous situations where private conduct takes on the color of law:[1] "when private actors conspire or are jointly engaged with state actors"; "where the state compels the discriminatory action"; "when the state controls a nominally private entity, . . . when it is entwined with its management or control'" "when the state delegates a public function to a private entity"; and "when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself". *Hallinan*, 570 F.3d at 815–16 (citations omitted). And the Court has set forth several tests to determine when private conduct constitutes state action, including the "state compulsion" test, the "nexus" test, and—relevant here—the "public function" test. *Lugar*, 457 U.S. at 939. Yet the Court has questioned whether these "tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry" of when state action can be attributed to private actors. *Id.*

---

[1] In cases under § 1983, the Supreme Court has treated, "under color of law" as the same thing as the "state action" required under the Fourteenth Amendment, *United States v. Price*, 383 U.S. 787, 794 n.7 (1966), and Plaintiffs, therefore, use those terms interchangeably.

II.    **Under the public function test, a function performed by a private entity that has been traditionally and exclusively reserved to the state constitutes state action.**

The public function test considers "whether the function performed [by the private entity] has been 'traditionally the exclusive prerogative of the State.'" *Rendell-Baker*, 457 U.S. at 842. This public function test requires that the function be both "traditionally performed by governments" and "exclusively reserved to the State," such as political elections or the operation of company-owned towns. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (internal quotations omitted).

The Supreme Court has long employed the public function test to find that conduct by a private entity that has traditionally been performed by, and exclusively reserved to, the government constitutes state action. *See Marsh v. Alabama*, 326 U.S. 501, 509 (1946) (holding that the First Amendment applied to a town owned and operated by a private corporation because the corporation was performing a public function and prohibited it from criminally punishing those who attempted to distribution religious literature). For example, the Court has held that elections to select candidates for public office constitute an exclusive public function, even when conducted by private entities. In *Smith v. Allwright*, 321 U.S. 649, 663 (1944), the Court held that the primary election held by the Democratic Party of Texas that allowed only whites to vote constituted state action because the party primary was an integral part the election process, in which all citizens have a right to participate, and thus the exclusion of voters of other races violated the Fifteenth Amendment. And in *Terry v. Adams*, 345 U.S. 461, 470 (1953), the Court held that preprimary elections conducted by the Jaybird Democratic Association in Texas—a

private, all-white political club associated with the Democratic Party—which effectively excluded black voters from the Democratic Party primary, constituted state action and violated the Fifteenth Amendment. The Jaybird Association's actions were deemed to be under color of state law because they had "become an integral part, indeed the only effective part, of the elective process that determines who shall rule and govern in the county." *Id*. at 469.

The Court has also held that parks are an exclusive government function. *Evans v. Newton*, 382 U.S. 296, 301 (1966). In that case, the Court held that exclusion based on race at a public park managed by private trustees constituted state action. *Id*. The Court stated that "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Id*. at 299. And further, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Id*.

And the Court has held that state action exists where a state parking authority leased space in its building to a private restaurant, because the restaurant operated as an integral part of a public building devoted to a public parking service. *Burton*, 365 U.S. at 724. In *Burton*, the Court engaged in a totality-of-the-circumstances analysis, concluding that "all these activities, obligations and responsibilities of the Authority, the benefits mutually conferred, together with the obvious fact that the restaurant is operated as an integral part of a public building devoted to a public

parking service, indicates that degree of state participation and involvement in discriminatory action which it was the design of the Fourteenth Amendment to condemn." *Id.*

Relying on the public function test, the Second Circuit held that a private animal-rescue organization and its employees acted under color of state law when they seized and performed surgery on the plaintiff's dogs in *Fabrikant v. French*, 691 F.3d 193, 197–98 (2d Cir. 2012). Animal control is traditionally an exclusive state function and the defendants' actions were "made possible only because [they were] clothed with the authority of state law." *Id.* at 209–10 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "The spaying and neutering of the dogs, like the search and arrest, constituted state action because they were part of the state function of animal control delegated to the SPCA by state law." *Id.* at 208.

And in *Janusaitis v. Middlebury Volunteer Fire Department*, the Second Circuit held that fire protection is "a function public or governmental in nature . . . which would have to be performed by the Government but for the activities" of volunteer departments. 607 F.2d 17, 18, 24 (2d Cir. 1979) (quoting *Perez v. Sugarman*, 499 F.2d 761, 764 (2d Cir. 1974)). The Court stated that "[i]f the function is one which is traditionally within the exclusive province of government, the entity performing that function may be considered to be an instrumentality of the government." *Id.* at 23.

Where the Court has held that state action does not exist under the public function test, it has done so almost always because the public function was not

exclusive to the government. *See Flagg Bros., Inc.*, 436 U.S. at 158–59. Thus, in

*Flagg Bros., Inc.*, the Court held that the settlement of disputes between debtors

and creditors was not a traditionally exclusive public function because there were

other means of resolving disputes. *Id.* at 161; *accord. Jackson v. Metropolitan*

*Edison Co.*, 419 U.S. 345, 353 (1974) (providing of utility services is not a

traditionally exclusive public function because state law imposed an obligation to

furnish utility services on the regulated private entities, not the state); *Manhattan*

*Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 810 (2019) (operation of public access

channels on a cable system has not been traditionally and exclusively performed by

government since such channels have been operated by a variety of private and

public actors); *Rendell-Baker*, 457 U.S. at 842 (the education of maladjusted high

school students is not exclusive to the state).

## III.  State action exists in this case because the City satisfies its constitutional obligation to provide public defenders to indigent criminal defendants, an exclusive public function, through its contract with LAS.

In this case, using the public function test, the fact-bound inquiry must result in

a finding that the employment of Plaintiffs as public defenders for indigent criminal

defendants constitutes state action.[2] In employing Plaintiffs Levine and Popper,

LAS performs a function traditionally and exclusively provided by the government:

fulfilling the City's statutory and constitutional obligation to provide public

---

[2] Plaintiffs do not rely on the "state compulsion" test or the "joint action" test to
show state action in this case, so they do not respond to Section I.B and I.C of
Defendants' Memo. *See* Memo 9–12.

defenders to indigent criminal defendants. *See Flagg Bros., Inc.*, 436 U.S. at 158.

The facts of this case are more like those in *West v. Atkins*, 487 U.S. 42 (1988). There, the Supreme Court held that a physician who contracts with the State to provide medical services to state prison inmates, even if employed by a private entity, acts under color of state law for purposes of § 1983 when undertaking his duties in treating an inmate's injury. *Id*. at 47, 54; *see also Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir. 1985) (private entity hired by a county to provide medical care to jail inmates provided traditional exclusive function of the state).

In *West* and *Ancata*, it did not matter whether the physician providing medical services to state prison inmates was employed directly by the government, was employed by a private entity, or was an independent contractor. What mattered was that those physicians were being used to meet the government's exclusive legal obligation to provide medical care to incarcerated individuals. *See Ancata*, 769 F.2d at 705.

Likewise, it does not matter whether the City directly employs Plaintiffs as public defenders or whether the City contracts with LAS to meet its statutory and constitutional obligation to provide public defenders to indigent criminal defendants. It is the exclusive public function of the government to provide public defenders to indigent criminal defendants. "The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national

10

constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law." *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). Ensuring that persons charged with crimes have access to counsel is fundamental and essential to our constitutional system and is an exclusive core government function.

*Polk County v. Dodson*, 454 U.S. 312 (1981) is not to the contrary. In that case, the Supreme Court deemed a public defender's actions to be private—*when performing a lawyer's traditional function as counsel to a defendant in a criminal proceeding*. *Id.* at 322, 325. The Court recognized that the public defender retained all the essential attributes of a private attorney, including her professional independence, which the State is constitutionally obliged to respect—*while performing her duties as counsel. Id.* at 321–22. *In that context*, a public defender does "not act on behalf of the State; he is the State's adversary." *Id.* at 323, n.13. Thus, *Polk County* is a narrow holding: the Court emphasized that its decision was "only that a public defender does not act under color of state law *when performing a lawyer's traditional functions as counsel* to a defendant in a criminal proceeding,"

*Polk County* recognized that public defenders *do* act under color of state law outside of that context. The Court acknowledged that it had previously held that a public defender acted under color of state law "when making hiring and firing decisions," *id.* at 325 (citing *Branti v. Finkel*, 445 U.S. 507, 515 (1980)), and that a public defender "would act under color of state law while performing certain

administrative and possibly investigative functions" *id*. at 325.

This case, unlike *Polk County*, is not about a public defender's actions as a lawyer. Indeed, this case has nothing to do with Plaintiffs' professional independence, or their representation of indigent criminal defendants. Rather, this case is about Plaintiffs' employment as public defenders—and whether it can be made conditional on the payment of union fees. Therefore, to determine whether state action exists, the relevant cases are those addressing City's statutory and constitutional obligation to provide public defenders to indigent clients—*see Gideon*, 372 U.S. at 344; *People v. Witenski*, 15 N.Y.2d 392 (1965)—which it does through contracting with LAS. And Plaintiffs are injured through the City's contract with LAS, which obligates them to pay money to ALAA, whose speech they do not wish to financially support, to be public defenders. Providing public defenders to indigent criminal defendants is a traditional and exclusive state function. Thus, state action exists, and the First Amendment applies.

*Lefcourt v. Legal Aid Society*, 445 F.2d 1150 (1971), another case on which Defendants rely, is likewise inapposite. *See* Memo 7–8. In that case, plaintiff was employed by the Legal Aid Society to provide public defender services for the City. He sued Legal Aid Society for violating his First Amendment right to free speech when his employment was terminated by the Society. *Id*. at 1151–52. The findings of fact in that case supported the Society's claim that he was terminated based on his inadequate performance in representing criminal defendants. *Id*. at 1153. The Second Circuit indicated that even if the plaintiff were employed directly by the

government, that there would be no First Amendment violation for terminating the plaintiff's employment under the facts of that case. *Id.* at 1153. ("Lefcourt was deprived of no constitutional rights. . . . Lefcourt's right to freedom of speech did not preclude the Society from concluding on the basis of Lefcourt's views that he was unable or unwilling to implement various policies of the Society.")

And, as in *Polk County*, the conclusion that there was no state action was based on a lawyer's traditional functions in representing his client, not the government's obligation to provide public defenders to indigent criminal defendants. *Id.* at 1156. That makes sense because the Second Court held that the Society was justified in firing plaintiff based on its "lack of confidence" in the plaintiff fulfilling his role as a representative of his client. The focus in *Lefcourt*, as in *Polk County*, was the actions of the lawyer in representing clients because that's what the claims in those cases were based on. But here, the withholding of fees on behalf of ALAA has nothing to do with Plaintiffs' actions in representing their clients.

Defendants' other cases involving public defenders also are irrelevant because they, too, involve the actions of a lawyer in representing a client. *See* Memo 7–8. *Rodriguez v. Weprin*, like *Polk County*, involved a criminal defendant suing his court-appointed appellate counsel. 116 F.3d 62, 65–66 (2d Cir. 1997). And Defendants' reliance on various district court rulings, Memo 8 n.9, are irrelevant for the same reason. *See Hickman v. Legal Aid Soc'y*, No. 19 Civ. 05294, 2020 U.S. Dist. LEXIS 113283 (S.D.N.Y June 26, 2020); *Polk v. Lewis*, 499 F. Supp. 302, 304 (S.D.N.Y. 1980); *Williams v. Jurow*, No. 05 Civ. 6949, 2007 U.S. Dist. LEXIS 97494,

*21 (S.D.N.Y. June 29, 2007) (court-appointed legal guardian not state actor related to her actions as a lawyer); and *Neustein v. Orbach*, 732 F. Supp. 333, 345 (E.D.N.Y. 1990) (same).

*Graseck v. Mauceri*, 582 F.2d 203 (2d Cir. 1978), like *Lefcourt*, involved the termination of an appellate attorney based on his performance in representing his clients. And *Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000), not only involved the termination of a lawyer based on his performance in representing his clients, but also the plaintiff in that case was employed by the Society as an investigator, not a public defender.

Additional facts in this case support the conclusion that state action exists under the public function test.[3] First, the City does not directly employ any public defenders. It contracts with organizations like LAS to provide criminal defense lawyers and it hires private attorneys who agree to take case assignments and get paid an hourly rate by the City. Compl. ¶ 18. Second, LAS's Criminal Defense Practice exists entirely to provide public defenders for the City. Compl. ¶ 19. Third, LAS's criminal defense attorneys represent no clients other than criminal defendants for whom LAS provides representation to satisfy the City's constitutional obligation to provide criminal defense to the indigent. Compl. ¶ 19. Fourth, LAS's Criminal Defense Practice is entirely government funded, predominated by the City, but also by the State of New York. Compl. ¶ 20. These

---

[3] To be clear, Plaintiffs do not assert that any of these facts independently would prove state action.

facts, in addition to the fact that the City's obligation to provide public defenders to indigent criminal defendants is a traditional and exclusive state function, strengthen the conclusion that state action exists here, in the way that the City provides individuals, like Plaintiffs, as public defenders to indigent criminal defendants. *See Burton*, 365 U.S. at 725 ("The State has so far insinuated itself into a position of interdependence with Eagle that it must be recognized as a joint participant in the challenged activity.").

This conclusion is narrow. It would no more transform all persons with whom the government contracts to provide services into state actors any more than the Supreme Court's decision in *West* did. The conclusion in this case is fact specific. *See Lindke*, 601 U.S. at 197. Plaintiffs do not allege, contrary to Defendants' claim, Memo 9, that the mere fact that the City contracts with LAS transforms LAS into a government actor. In this case state action exists because the City meets its constitutional obligation to provide public defenders to indigent criminal defendants—an exclusive government function—by contracting with LAS to provide Plaintiffs (and other LAS employees) exclusively as public defenders, and paid entirely by government funds. Under the circumstances of this case, state action must be found and applied to the requirement that Plaintiffs pay money to ALAA as a condition of being public defenders in New York City.

## Conclusion

Because the City has a constitutional obligation to provide public defenders to indigent criminal defendants, and that obligation is an exclusive public function,

15

the way in which the City provides public defenders through contracting with LAS constitutes state action. Therefore, the obligation that Plaintiffs pay ALAA as a condition of their position as public defenders is subject to First Amendment scrutiny. The motion to dismiss should be denied.

Dated: October 18, 2024                    Respectfully submitted,

                                           /s/ Jeffrey M. Schwab
                                           Jeffrey M. Schwab (IL Bar. No. 6290710)
                                           Dean McGee
                                           James J. McQuaid (IL Bar. No. 6321108)
                                           Liberty Justice Center
                                           7500 Rialto Blvd.
                                           Suite 1-250
                                           Telephone: 512-481-4400
                                           jschwab@libertyjusticecenter.org
                                           dmcgee@libertyjusticecenter.org
                                           jmcquaid@libertyjusticecenter.org

                                           *Counsel for Plaintiffs*