UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARNOLD LEVINE and ALLEN S. POPPER,<br><br>Plaintiffs,<br><br>v.<br><br>ASSOCIATION OF LEGAL AID ATTORNEYS, UAW LOCAL 2325; LEGAL AID SOCIETY; AND THE CITY OF NEW YORK,<br><br>Defendants. | Case No. 1:24-cv-02733-PKC |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

Defendants Legal Aid Society ("Legal Aid" or "LAS"), Association of Legal Aid Attorneys, UAW Local 2325 ("ALAA"), and the City of New York ("NYC" or the "City") respectfully submit this Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint and in response to Plaintiffs' Opposition (ECF 32, "Opp.").[1]

## ARGUMENT

### I. PLAINTIFFS' SECTION 1983 CLAIM FAILS FOR LACK OF STATE ACTION

There is no dispute over the applicable standards. Plaintiffs concede that in order to state a Section 1983 claim, they must allege an injury from "state action," *i.e.*, either an action by "a state actor" or a private party whose action can be fairly attributed to the state. Mot. at 6; Opp. at 4. They also do not dispute the well-established and limited tests for attributing a private party's conduct to the state. Mot. at 6-7; *see* Opp. at 4-5. And they do not contest that state action does not exist merely because the state contracts with, funds, or subsidizes a private entity. Mot. at 2, 8-9; *see* Opp. at 14-15.

Nor is there any dispute over the dispositive facts. Plaintiffs admit that they were employed by LAS—not the City. Opp. at 1, 3. They admit that both LAS and ALAA are private entities. *Id.* at 3. And they concede[2] that the City had no involvement in negotiating or enforcing the CBA between LAS and ALAA and did not compel LAS or ALAA to enter into or enforce the Union Security Clause. Mot. at 9-11; Opp. at 9 n.2. Indeed, Plaintiffs do not deny (because they cannot deny) that the City expressly disclaimed responsibility over the CBA. Mot. at 11; Opp. at 9 n.2.

Given Plaintiffs' multiple concessions, the Opposition unsurprisingly acknowledges that

---

[1] Capitalized terms used but not defined herein shall have the same meaning as in Defendants' Memorandum of Law in Support of their Motion to Dismiss (ECF 29, "Mot." or "Motion").

[2] Plaintiffs' "failure to address" an argument in their Opposition "amounts to a concession or waiver of the argument." *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 318 n.10 (S.D.N.Y. 2021); *In re UBS AG Secs. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (party "concedes through silence" arguments it fails to address).

there was no "state compulsion" or "joint action" by the City, Opp. at 9 n.2, thereby abandoning Plaintiffs' claims against ALAA and the City. Those claims should, therefore, be dismissed. With respect to LAS, Plaintiffs raise a new theory that LAS "performs a function traditionally and exclusively provided by the government: fulfilling the City's statutory and constitutional obligation to provide public defenders to indigent criminal defendants." Opp. at 9-10. Because that new theory is nowhere alleged in the Complaint, unsupported by any well-pled facts, and unfounded as a matter of law, the claim against LAS should be dismissed as well.

  **A.** *Plaintiffs' Claim Against ALAA Should Be Dismissed*

Defendants moved to dismiss on the grounds that (i) ALAA does not perform any traditional and exclusive public function (and was not alleged to have done so in the Complaint), Mot. at 9, (ii) ALAA's decision to enter into the CBA with LAS or enforce the same was not compelled by the City, *id.* at 9-12, and (iii) the City was not involved in ALAA's decisions, *id.* at 12. Plaintiffs expressly waive the latter two arguments. Opp. at 9 n.2 ("Plaintiffs do not rely on the 'state compulsion' test or the 'joint action' test to show state action in this case, so they do not respond to Section I.B and I.C of Defendants' Memo."). With respect to Plaintiffs' current theory that state action exists under the "public function" test, neither the Complaint nor the Opposition purports to identify any exclusive public function performed by ALAA and Plaintiffs do not respond to Defendants' argument that ALAA performs no such function. Mot. at 9; Opp. at 9-15. As such, Plaintiffs' claim against ALAA is deemed abandoned, and should be dismissed. *See, e.g.*, *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018) (dismissing claim where "[p]laintiffs [did] not oppose" defendants' arguments); *Burchette v. Abercrombie & Fitch Stores, Inc.*, 2009 WL 856682, at *8–9 (S.D.N.Y. Mar. 30, 2009) (same).

### B. *Plaintiffs' Claim Against the City Should Be Dismissed*

Defendants moved to dismiss Plaintiffs' First Amendment claim against the City because (i) the City is not alleged to have compelled ALAA or LAS to enter into or enforce the CBA; (ii) any allegation that the City "was, or should have been, aware" of the CBA is insufficient to show state action; (iii) the alleged conditions accompanying the City's funding of LAS pursuant to the NYC Contract do not implicate the City generally in LAS's hiring of Plaintiffs or employment practices; and (iv) the City's funding, auditing, and contracting activities with LAS did not rise to the level of state "entwinement" required to show joint action, especially since the City has expressly disclaimed responsibility for LAS's collective bargaining arrangements. Mot. at 9-13. Plaintiffs did not respond to these arguments and, therefore, concede that the City must be dismissed. Opp. at 9 n.2. In their Opposition, Plaintiffs admit that they are only proceeding under the "public function" test, which, under Plaintiffs' theory, applies exclusively to whether "*LAS performs a function traditionally and exclusively provided by the government: … provid[ing] public defenders to indigent criminal defendants.*" Opp. at 9-10 (emphasis added). Accordingly, Plaintiffs' claim against the City is also abandoned and should likewise be dismissed. *DoubleLine*, 323 F. Supp. 3d at 449; *Burchette*, 2009 WL 856682, at *8–9.

### C. *Plaintiffs' Claim Against LAS Should Be Dismissed*

In addition to the now-conceded arguments that there was no "state compulsion" or "joint activity" with respect to LAS's challenged conduct, Mot. at 9-11, Defendants moved to dismiss on the ground that LAS performed no "traditional, exclusive public function" because (i) under long-settled precedent, "representing indigent criminal defendants" is not among the "very few" exclusive public functions triggering the state action doctrine and (ii) neither the fact that LAS contracted to provide representation to indigent defendants nor the allegation that LAS's Criminal Defense practice is fully government funded is sufficient to make LAS a state actor, *id.* at 7-9.

3

Plaintiffs respond with two arguments. First, they raise a new theory that "LAS performs a function traditionally and exclusively provided by the government: fulfilling the City's statutory and constitutional obligation to provide public defenders to indigent criminal defendants." Opp. at 9-15; *see also id.* at 2, 4. Second, while conceding that neither the existence of the NYC Contract nor the allegation that LAS's Criminal Defense practice is fully government funded "independently" proves state action, Opp. at 14 n.3, they nevertheless argue that these and other "additional facts" support a finding that state action exists, *id.* at 14-15. Both arguments fail.

1. LAS Does Not Perform Any Exclusive Public Function

As a threshold matter, the Complaint nowhere alleges that LAS performed any traditional and exclusive public function. The Complaint alleges only that the City contracts with LAS to provide a "core government function" and identified that relevant function as "criminal defense representation to indigent [defendants]," compl. ¶¶ 5, 42, which is not sufficient to meet the "public function test." As Plaintiffs' own authority confirms, the watchword of the "public function" test is "*exclusivity*," *i.e.*, the challenged function must have traditionally been the "exclusive prerogative" of the state, like running an election or operating a town. *Flagg Bros. v. Brooks*, 436 U.S. 149, 159 (1978) (emphasis added) (cited Opp. at 6, 9-10). The Complaint made no such allegation of "exclusivity" with respect to any function performed by LAS.[3]

Even if Plaintiffs could pursue this new theory now—particularly after disclaiming any need to amend in their pre-motion letter, ECF 25, and choosing not to amend before the Court-ordered deadline, ECF 26—it fails regardless.

It is well settled that a "formulaic recitation of the elements" of a claim does not satisfy a plaintiff's obligation to "state a claim to relief that is plausible on its face" to survive dismissal

---

[3] While Plaintiffs' pre-motion letter raised this issue, it nowhere alleged any supporting facts. *See* ECF 25 at 3. In that same filing, Plaintiffs expressly stated their intention to stand on their Complaint and forego amendment. *Id.* at 2.

4

under Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). But that is all Plaintiffs have done here. They assert in conclusory fashion that "the City's constitutional obligation to provide public defenders to indigent criminal defendants is a traditional and exclusive function of the state," but nowhere point to any supporting facts. Opp. at 2, 4, 9-15. Instead, Plaintiffs raise a series of legal arguments based on case law which (i) are no substitute for well-pled facts and (ii) fail regardless.

***First***, Plaintiffs argue that the long-settled precedent cited by Defendants holding that LAS does not perform any exclusive public function, Mot. at 7-8, is inapposite because those cases concerned "a public defender's actions as a lawyer," whereas Plaintiffs' claim "is about Plaintiffs' employment as public defenders." Opp. at 12. But Defendants' cases are not as limited as Plaintiffs argue, and their holding that LAS performs no exclusive public function applies regardless of how Plaintiffs describe the relevant function, *compare* Opp. at 12 *with* Compl. ¶ 42 ("criminal defense representation to indigent") *and* Opp. at 2, 4, 9-10 ("[t]he City's statutory and constitutional obligation to provide public defenders to indigent criminal defendants"):

- *Lefcourt v. Legal Aid Soc.* (Mot. at 7-8; Opp. at 12-13): the Second Circuit dismissed an action by a terminated LAS attorney and squarely rejected the same argument Plaintiffs make here—*i.e.*, that LAS is a state actor "because [] the function it fulfills," "defense of indigent persons accused of criminal activity," is "mandated" by the Constitution and state law. *Lefcourt*, 445 F.2d 1150, 1156 (2d Cir. 1971). Plaintiffs argue *Lefcourt* turned on the fact that plaintiff was terminated "based on his inadequate performance in representing criminal defendants." Opp. at 12. Not so. The Second Circuit reasoned that representation of indigent criminal defendants, while a "constitutionally essential" function, *was typically performed by private persons*, and found that LAS's "hiring and firing practices … [did] not involve the manner in which [LAS] carries on its public function." *Lefcourt*, 445 F.2d at 1156-57.

- *Graseck v. Mauceri* (Mot. at 8, 11; Opp. at 14): the Second Circuit dismissed an action by a terminated LAS attorney by adopting *Lefcourt*'s reasoning that "[t]he lack of governmental control over or interference with [LAS's] affairs was [] pivotal," and not based on the alleged reason for that plaintiff's termination, as Plaintiffs argue. *Graseck*, 582 F.2d 203, 208 n.18, 209-210 (2d Cir. 1978).

- *Schnabel v Abramson* (Mot. at 8, 11; Opp. at 14): the Second Circuit expressly

5

considered and rejected the same argument Plaintiffs advance here—that *Lefcourt* and *Graseck* are distinguishable because they did not involve a public defender's "hiring and firing decisions." Opp. at 11 (citing *Polk County v. Dodson*, 454 U.S. 312 (1981) and *Branti v. Finkel*, 445 U.S. 507, 515 (1980)).[4] To the contrary, the Second Circuit affirmed that "[its] decisions in *Lefcourt* and *Graseck* relied in significant part on the 'lack of governmental control over or interference with' legal aid societies' affairs" and concluded that *Branti* was not to the contrary. *Schnabel*, 232 F.3d 83, 87 (2d Cir. 2000).

***Second***, Plaintiffs argue that "the relevant cases are" *Gideon v. Wainwright*, 372 U.S. 335 (1963) and *People v. Witenski*, 15 N.Y.2d 392 (1965). Opp. at 12. While these cases affirmed criminal defendants' right to counsel under federal and state law, *Gideon*, 372 U.S. at 344; *Witenski*, 15 N.Y.2d. at 396-97, they made no mention of the state action doctrine and did not purport to create any "exclusive public function." Plaintiffs do not cite a single case where a court has concluded that the constitutional right to counsel recognized in *Gideon* and *Witenski* automatically rendered the "provi[sion] of public defenders to indigent criminal defendants," Opp. at 12, an "exclusive" state function, as Plaintiffs apparently contend. That is not surprising. As recognized in *Lefcourt* (decided after *Gideon*), "[a]lthough the State must see to it that indigents are provided with free legal counsel where they are constitutionally entitled to same, the [s]tate need not itself provide such counsel." 445 F.2d at 1157 n.10. To the contrary, "the representation of indigent persons accused of criminal activity" is a function that is "normally performed for and by private persons." *Id.* at 1156-57. Indeed, in 2004, the ABA published an article analyzing states' efforts to fulfill *Gideon*'s "mandate" and observing that, "[m]ore than half of the nation's counties appoint private attorneys [on an ad hoc basis]" and still others, like the City does here, "use a contract system in which individual attorneys or firms bid to provide some or all of the public defense

---

[4] Neither *Branti* nor *Polk* speak to the hiring and firing decisions of a private entity providing public defenders like LAS. *Branti* concerned the firing decisions of the "Rockland County Public Defender," who was appointed by the County Legislature and exercised hiring authority granted by the state. 445 U.S. at 515. *Polk* likewise involved a public defender who was "a full-time employee of the county" and merely acknowledged *Branti*'s implicit holding that a public defender acted under color of state law when making "hiring and firing decisions *on behalf of the State*." 454 U.S. at 314, 325 (emphasis added).

6

services."[5] *Gideon* and *Witenski* thus did not transform "providing public defenders to indigent criminal defendants," Opp. at 12, into an "exclusive prerogative" of the state, *Flagg Bros.*, 436 U.S. at 160.

***Third***, Plaintiffs argue that this case is factually analogous to *West v. Atkins*, 487 U.S. 42 (1988) and *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir. 1985). Opp. at 10. But neither case involved an employment matter, which is what Plaintiffs argue this case is about, *id.* at 12. Both cases concerned the failure of private contractors engaged by the state to adequately provide constitutionally required medical care to inmates. *West,* 487 U.S. at 55-57; *Ancata,* 769 F.2d at 703-06. By Plaintiffs' own logic, these cases are inapposite because Plaintiffs' claim does not pertain to whether any constitutionally required services were adequately provided. Moreover, the *West* decision emphasized the "exclusive" nature of the relevant function—"the only medical care [plaintiff] could receive … was that provided by the State." *West,* 487 U.S. at 55-57. Plaintiffs here do not, and cannot, allege that indigent defendants have no alternative but to be defended by attorneys contracted or otherwise provided by the City.

***Lastly***, while Plaintiffs assert that the state action doctrine demands a "fact-bound" or "fact-intensive" inquiry, Opp. at 4-5, 9-10, Plaintiffs' failure to identify any facts supporting their theory obviates the need for further inquiry. As Plaintiffs' own authority confirms, Opp. at 8-9, Section 1983 claims are routinely dismissed at the pleading stage where, as here, there are no facts alleged to show that a private entity performs any exclusive public function. *See, e.g.*, *Flagg Bros.*, 436 U.S. at 160 (affirming dismissal where "historical[]" data, text of the relevant statute, and

---

[5] ABA, "Gideon's Unfulfilled Mandate: Time for a New Consensus," (Jan. 1, 2004), https://www.americanbar.org/groups/crsj/publications/human_rights_magazine_home/human_rights_vol31_2004/winter2004/irr_hr_winter04_gideon/. The Court may take judicial notice of these findings published by the ABA. *See, e.g.*, *Meehan v. Cent. R. Co. of N. J.*, 181 F. Supp. 594, 615 (S.D.N.Y. 1960) (taking judicial notice of "statistics as to lawyers' incomes in stud[y] by American Bar Association"); *see also In re Tibco Software, Inc.*, 2006 WL 2844421, at *1 n.1 (N.D. Cal. Sept. 29, 2006) (taking judicial notice of scholarly article).

plaintiff's lack of relevant allegations showed that defendant did not perform any function that was the "exclusive prerogative" of the state); *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (affirming dismissal where "legislative policy choice [to provide special education services at public costs] in no way [made] th[o]se services the exclusive province of the State."). The same result should issue here.

        2. <u>Plaintiffs' "Additional Facts" Do Not Show Any State Action</u>

Plaintiffs also vaguely assert that certain "additional facts" support a finding that there is state action here, namely that: (i) the City does not directly employ any public defenders but instead contracts with or hires private attorneys; (ii) LAS's Criminal Defense Practice exists entirely to provide public defenders for the City; (iii) LAS criminal defense attorneys represent no other clients other than the indigent criminal defendants constitutionally entitled to representation; and (iv) LAS's Criminal Defense practice is allegedly "entirely government funded."[6] Opp. at 14-15 (citing Compl. ¶¶ 18-20). This argument also fails.

***First***, Plaintiffs concede that these "facts" do not "independently [] prove state action" and that they are only relevant "in addition to the fact that the City's obligation to provide public defenders to indigent criminal defendants is a traditional and exclusive state function." Opp. at 14-15 & n.3. As explained *supra* §I.C.1, Plaintiffs have not shown the existence of such an exclusive state function here. So, these "additional facts" are irrelevant.

***Second***, insofar as Plaintiffs suggest based on these additional facts that the City has "so far insinuated" itself into LAS's activities "that it must be recognized as a joint participant in the challenged activity," Opp. at 15 (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715,

---

[6] The Complaint also alleged that the City imposes "conditions" as part of the NYC Contract that, "at least in part, exert control over how [LAS] spends funds received by [sic] the City," compl. ¶ 20, but Plaintiffs have abandoned any argument based on that allegation by not addressing it in their Opposition, *see* Mot. at 10-11; Opp. at 9 n.2.

8

722 (1961)), that suggestion should be disregarded because Plaintiffs unequivocally conceded there was no "joint action." Opp. at 9 n.2. Moreover, *Burton* is inapposite. There, the Supreme Court held that racial discrimination by a restaurant located inside a state-owned and operated parking facility was chargeable to the state because the restaurant was a "physically and financially integral" part of the state's operation of the facility, and the state had the ability to control the restaurant's actions through the lease. *Burton*, 365 U.S. at 716, 723-25. The more relevant precedent is *Graseck*, where the Second Circuit held that the lack of government participation in LAS's "general management and internal operations preclude[d] a finding [] of the degree of pervasive interdependence or partnership contemplated by *Burton*," 582 F.2d at 210 n.22, notwithstanding that "the criminal division of the [LAS chapter] in [that] case [was] entirely funded by the Suffolk County Legislature," *id.* at 208 n.19.

***Third***, even if Plaintiffs' concession on the "joint action" test is not dispositive, Plaintiffs do not—and cannot—allege that the City was a joint participant in "the *challenged* activity." *Burton*, 365 U.S. at 716, 722 (emphasis added). Plaintiffs' alleged injury arises from their "employment as public defenders" and the "requirement that [they] pay money to ALAA as a condition of" their employment. Opp. at 12, 15. But Plaintiffs agree the City is not their employer, Opp. at 1, and they fail to address, and therefore concede, Defendants' arguments that the City had no involvement in LAS and ALAA entering into or enforcing the terms of the CBA's Union Security Clause, Mot. at 9-12; Opp. at 9 n.2.

## CONCLUSION

For the above reasons and those articulated in the Motion, the Complaint should be dismissed in its entirety with prejudice.

9

| | |
|---|---|
| Dated: November 22, 2024<br>New York, New York | Respectfully submitted,<br><br>FRESHFIELDS US LLP<br><br>/s/ *Mary Eaton*<br>Mary Eaton<br>Abhinaya Swaminathan<br>3 World Trade Center, 51st Floor<br>175 Greenwich Street<br>New York, NY 10007<br>Telephone: (212) 277-4000<br>mary.eaton@freshfields.com<br>abhinaya.swaminathan@freshfields.com<br><br>*Counsel for Defendant Legal Aid Society*<br><br>MURIEL GOODE-TRUFANT<br>ACTING CORPORATION COUNSEL FOR THE CITY OF NEW YORK<br><br>/s/ *Madeleine A. Knutson**<br>Madeleine A. Knutson<br>100 Church Street<br>Room 2-173<br>New York, NY 10007<br>Telephone: (212) 356-2445<br>mknutson@law.nyc.gov<br><br>*Counsel for Defendant City of New York*<br>* Signature used with permission pursuant to S.D.N.Y. ECF Rule 8.5<br><br>LEVY RATNER, P.C.<br><br>/s/ *Allyson L. Belovin**<br>Aleksandr L Felstiner<br>Allyson Leigh Belovin<br>Jessica Isa Apter<br>80 Eighth Avenue, Floor 8<br>New York, NY 10011<br>Telephone: (212) 627-8100<br>afelstiner@levyratner.com<br>abelovin@levyratner.com<br>japter@levyratner.com<br><br>*Counsel for Defendant Association of Legal* |

10

*Aid Attorneys UAW Local 2325*
\* Signature used with permission pursuant to S.D.N.Y. ECF Rule 8.5