UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ARNOLD LEVINE and ALLEN S. POPPER,

                           Plaintiffs,                         24-cv-2733 (PKC)

              -against-                     OPINION AND ORDER

ASSOCIATION OF LEGAL AID ATTORNEYS,
UAW LOCAL 2325, LEGAL AID SOCIETY and
CITY OF NEW YORK,

                           Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Arnold Levine and Allen S. Popper are employed as attorneys at

defendant Legal Aid Society ("Legal Aid").  They represent indigent defendants in criminal

cases.  Legal Aid is party to a collective bargaining agreement ("CBA") with defendant

Association of Legal Aid Attorneys, UAW Local 2325 ("ALAA"), pursuant to which attorneys

employed by Legal Aid must pay union dues or an equivalent amount in fees to the ALAA.

        In 2022 and 2023, the ALAA issued public statements supporting "Palestinian

liberation from Israeli apartheid" and accusing Israel of "genocidal" acts against Palestinians,

among other similar statements.  Levine and Popper consider the ALAA's statements antisemitic

and highly objectionable.  They bring a claim under 42 U.S.C. § 1983, asserting that they have

been denied the protections of the First Amendment because they are compelled as a condition of

employment to pay union dues or fees toward the advocacy of positions that they oppose.  While

they acknowledge that Legal Aid is formally a private entity, they assert that because its criminal

defense practice is funded principally by defendant City of New York (the "City") in order to

meet the City's constitutional obligations to indigent criminal defendants, it performs a

traditional, exclusive public function, making it a person acting under color of state law for the purposes of section 1983.

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. (ECF 28.) As will be discussed, the Supreme Court and Second Circuit have emphasized that very few functions qualify as a traditional, exclusive public function sufficient to make a private entity a state actor.[1] They have repeatedly concluded that public defenders, legal aid societies, and other legal-services providers that rely on public funding do not perform traditional public functions that make them state actors for section 1983 purposes.

For the reasons that will be explained, the Complaint does not plausibly allege that Legal Aid or the ALAA perform a traditional, exclusive public function that renders them state actors. The Complaint also does not allege facts that describe any involvement by the City in plaintiffs' terms of employment, the CBA or the statements of the ALAA. Defendants' motion to dismiss will be granted.

BACKGROUND

Levine and Popper are employed by Legal Aid as attorneys who represent indigent criminal defendants. (Compl't ¶¶ 7-8, 14-15.) Levine works in the Homicide Defense Task Force and Popper represents defendants in Queens County courts. (Compl't ¶¶ 7-8.)

Legal Aid is a not-for-profit organization. (Compl't ¶ 10.) Legal Aid and the City have entered into a contract pursuant to which Legal Aid provides public defenders to

---

[1] To be liable under section 1983, a defendant's actions must have been taken under the color of state law. Courts use the term "state actor" in connection with the state-action doctrine, which "distinguishes the government from individuals and private entities" and draws "the constitutional boundary between the governmental and the private . . . ." Manhattan Community Access Corp. v. Halleck, 587 U.S. 802, 808 (2019). "[T]he statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical" and consider "whether a nominally private person has engaged in state action for purposes of § 1983." Lindke v. Freed, 601 U.S. 187, 195 (2024). The Court uses the term "state actor" to refer to whether defendants acted in such a capacity and under color of state law and thus can be subject to liability under section 1983.

represent indigent defendants in the City's courts.  (Compl't ¶¶ 10, 18; ECF 30-1.)  The City

relies on Legal Aid to meet its constitutional obligations to indigent criminal defendants and

Legal Aid's criminal defense practice is entirely government funded, principally by the City.

(Compl't ¶¶ 19-20.)

Plaintiffs' assertion that defendants are state actors who are amenable to suit

under section 1983 turns on the relationships between the City, Legal Aid, and the ALAA.  The

ALAA entered into a CBA with Legal Aid that requires all Legal Aid attorneys to pay either

union dues or an equivalent amount in fees to the ALAA as a condition of employment.

(Compl't ¶¶ 3, 5, 21.)  The ALAA represents more than 2,700 public-interest attorneys in the

New York City area and collectively bargains with Legal Aid.  (Compl't ¶¶ 9, 22.)  The

Complaint asserts that because the City relies on Legal Aid to meet its constitutional obligations

to indigent defendants and provides substantial funding to Legal Aid, Legal Aid performs a "core

government function" and is bound by the constitutional requirements of a state instrumentality.

(Compl't ¶¶ 17, 34-42.)  Plaintiffs assert that their hiring by "Defendants" constitutes a state

action.  (Compl't ¶ 43.)  They assert that they carry out the roles of City employees in all ways

but formal title, and therefore are entitled to the same constitutional protections as government

employees, including protection against any requirement to pay money to a labor union that they

do not wish to support.  (Compl't ¶¶ 35-40.)

On July 25, 2022, the ALAA passed a resolution "in support of Palestinian

liberation from Israeli apartheid" that called for "UAW to divest itself from any and all Israel

bonds."  (Compl't ¶ 23.)  On December 19, 2023, the ALAA passed a resolution stating that

"Israel has, since the violent tragedy on October 7, 2023, increasingly espoused genocidal

rhetoric against all Palestinians," accusing Israel of "ethnic cleansing, and genocide," and calling

"for an end to Israeli apartheid and the occupation and blockade of Palestinian land, sea, and air by Israeli military forces." (Compl't ¶ 24.) Both Levine and Popper are Jewish, and state that they find the ALAA's resolutions to be antisemitic and objectionable. (Compl't ¶¶ 4, 25.) Levine and Popper assert that they wish to stop paying dues or fees that subsidize these messages of the ALAA. (Compl't ¶¶ 25-26.)

Levine contacted the ALAA requesting that union dues no longer be drawn from his paycheck. (Compl't ¶ 27.) The ALAA responded with a letter stating that Levine was not required to be a union member, but that if he withdrew, he would still be required to pay dues-equivalent fees to the ALAA as a condition of employment. (Compl't ¶ 27 & Ex. A.) The ALAA further stated to Levine that because Legal Aid is not a public-sector employer, it is not bound by Janus v. American Federation of State, County, & Municipal Employees, Council 31, 585 U.S. 878 (2018), which held that public-sector employees may not be compelled to join a labor union and subsidize the speech of a labor union on matters of public concern. (Compl't ¶ 28 & Ex. A.)

The Complaint brings a single cause of action pursuant to 42 U.S.C. § 1983, relying on Janus and asserting that the First Amendment prohibits defendants from withholding union dues or fees without plaintiffs' consent. (Compl't ¶¶ 12, 32-45.) It seeks an injunction against requiring plaintiffs to pay dues or fees to ALAA as a condition of their employment as well as damages for the union dues collected from plaintiffs by ALAA. (Compl't at pp. 8-9.) RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 570 (2007)).  A court assessing the sufficiency of a complaint must disregard legal labels or

conclusions, which are not entitled to the presumption of the truth.  Iqbal, 556 U.S. at 678.

Instead, the court must examine only the well-pleaded factual allegations, if any, "and then

determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal

under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint,

and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a

matter of law.'"  Michael Grecco Products, Inc. v. RADesign, Inc., 112 F.4th 144, 150 (2d Cir.

2024) (quoting Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015)).

On a Rule 12(b)(6) motion, courts may also consider any document attached to

the complaint or statements and documents incorporated into the complaint by reference.  See,

e.g., In Re Shanda Games Ltd. Sec. Litig., 128 F.4th 26, 41 (2d Cir. 2025).  Defendants have

submitted portions of an agreement between Legal Aid and the City dated October 12, 2018, as

well as the CBA governing the period of 2022-2025 entered into between Legal Aid and the

ALAA.  (ECF 30.)  These documents are referenced throughout the Complaint and therefore are

appropriately considered by the Court on this Rule 12(b)(6) motion.

DISCUSSION.

I.      The Complaint Does Not Plausibly Allege that
        Legal Aid and the ALAA Are State Actors.

"To state a claim for relief in an action brought under § 1983, [plaintiffs] must

establish that they were deprived of a right secured by the Constitution or laws of the United

States, and that the alleged deprivation was committed under color of state law."  American

Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  "[T]he under-

color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter

how discriminatory or wrongful."  Id. (quotation marks omitted).  "Because local governments

are subdivisions of the State, actions taken under color of a local government's law, custom, or usage count as 'state' action for purposes of § 1983. " <u>Lindke</u>, 601 U.S. at 195 n.1.

      Nominally private conduct "is fairly attributable to the state" if a plaintiff can "demonstrate[e] that there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." <u>Grogan v. Blooming Grove Volunteer Ambulance Corps</u>, 768 F.3d 259, 264 (2d Cir. 2014) (quotation marks omitted). "[A] private entity can qualify as a state actor in a few limited circumstances – including, for example, (i) when the private entity performs a traditional, exclusive public function . . . ." <u>Manhattan Community Access</u>, 587 U.S. at 809. "The [Supreme] Court has stressed that 'very few' functions fall into that category. Under the Court's cases, those functions include, for example, running elections and operating a company town." <u>Id.</u> (internal citations omitted). "[A] variety of functions do not fall into that category, including . . . representing indigent criminal defendants . . . ." <u>Id.</u> at 810.

      Plaintiffs assert that Legal Aid performs the traditional, exclusive public function of providing legal services to indigent criminal defendants and that it therefore can be sued under section 1983 as a state actor.[2] They assert that under <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963), and <u>People v. Witenski</u>, 15 N.Y.2d 392 (1965), the City has an obligation to provide counsel to indigent criminal defendants, and that it relies upon and contracts with Legal Aid to meet this obligation. (Compl't ¶¶ 17-18.) Plaintiffs characterize the representation of indigent defendants as "a core government function" and assert the "Defendants' hiring of Plaintiffs

---

[2] Plaintiffs disclaim reliance on other possible grounds for classifying Legal Aid or the ALAA as a state actor. <u>See</u> ECF 32 at p. 9 n.2 ("Plaintiffs do not rely on the 'state compulsion' test or the 'joint action' test to show state action in this case . . . .").

through [Legal Aid], which required them to be part of ALAA, constitutes state action."
(Compl't ¶¶ 5, 42-43; Opp. Mem. at 10-12 (ECF 32).)

In <u>Polk County v. Dodson</u>, 454 U.S. 312 (1981), the Supreme Court held that a
public defender representing an indigent defendant in a state criminal proceeding does not act
under color of state law when acting on behalf of a client.  A public defender acts as "a personal
counselor and advocate" for "the undivided interests of his client.  This is essentially a private
function, traditionally filled by retained counsel, for which state office and authority are not
needed."  <u>Id.</u> at 318-19 (quotation marks omitted).  Although public defenders are paid by the
state, they do not act under color of state law because of "the constitutional obligation of the
State to respect the professional independence of the public defenders whom it engages" and
because a public defender cannot be "the servant of an administrative superior" in state
government.  <u>Id.</u> at 321-22.  <u>Polk County</u> noted, however, that there may be circumstances where
a public defender acts under color of state law, such as when making hiring and firing decisions
on behalf of a state or when performing certain administrative or investigative functions.  <u>Id.</u> at
324-25.

In a case arising out of an attorney's termination of employment, the Second
Circuit held that Legal Aid is not amenable to suit as a state actor under section 1983.  Plaintiff
in <u>Lefcourt v. Legal Aid Society</u>, 445 F.2d 1150, 1152-53 (2d Cir. 1971), was a former Legal
Aid attorney who claimed that he was wrongfully discharged in violation of his First
Amendment rights after stating that Legal Aid should discourage defendants from entering guilty
pleas and work to "foment black revolution."  Plaintiff asserted that Legal Aid was a state actor
because it contracted with the City to represent indigent criminal defendants in order to meet the
City's obligations under the Sixth Amendment and New York law.  <u>Id.</u> at 1153-56.  The Second

Circuit concluded that criminal representation is typically a private function, that the City had "few controls" over Legal Aid, that Legal Aid's obligation is to its clients and not the City, and that Legal Aid's employment practices did not relate to a public function. Id. at 1156-57. "To subject to the constitutional limitations on State action the hiring and firing and other practices of any private law firm which accepted court appointments to represent indigent claims, would be a highly unreasonable extension of the State action concept and § 1983 and would quite transcend their intended scope." Id. at 1157 n.10.

Citing Polk County and Lefcourt, the Second Circuit has consistently rejected section 1983 claims asserting that a private but state-funded provider of legal services functions as a state actor. See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (concluding in employment discrimination context that Legal Aid Society of Orange County is not a state actor when there is a "lack of governmental control over or interference with legal aid societies' affairs notwithstanding the receipt of substantial government funds by the societies") (quotation marks omitted); Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997) ("it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."); Graseck v. Mauceri, 582 F.2d 203, 208 (2d Cir. 1978) (concluding in wrongful-discharge action that Suffolk County Legal Aid Society is not a state actor even though it relies upon "substantial government funding" because "there is no formal mechanism for government control or supervision" over its "internal operations"); see also Milan v. Wertheimer, 808 F.3d 961, 964 (2d Cir. 2015) (state-funded "law guardians" who act as attorneys for a child are not state actors for section 1983 purposes); Hickman v. Legal Aid Soc'y, 2020 WL 4549207, at *4 (S.D.N.Y. June 26, 2020) ("The Legal Aid Society and its employees, however, are not state actors and therefore

do not act under color of state law when defending clients for whom they are appointed."), <u>R&R</u>
<u>adopted,</u> 2020 WL 4547224 (S.D.N.Y. Aug. 6, 2020); <u>Torres v. City of New York</u>, 2019 WL
6051550, at *5 (S.D.N.Y. Nov. 13, 2019) ("Absent special circumstances suggesting concerted
action between a private legal aid organization and a state representative, the actions of such an
organization do not constitute the degree of state involvement sufficient to state a claim against it
under § 1983.") (McMahon, J.); <u>Santagata v. City of New York</u>, 2017 WL 2963453, at *2
(E.D.N.Y. July 11, 2017) ("The Legal Aid Society is not a State actor amenable to suit under
Section 1983.") (Chen, J.).

    At the same time, "the determination whether a public defender is a state actor for
a particular purpose depends on the nature and context of the function he is performing."
<u>Georgia v. McCollum</u>, 505 U.S. 42, 54 (1992).  The Supreme Court held that First Amendment
protections applied to public defenders in <u>Branti v. Finkel</u>, 445 U.S. 507, 509 (1980), a case in
which a public defender newly appointed by the county legislature terminated six assistants
based on their political party registration.  Without addressing the issue of state action, the
Supreme Court concluded that such conduct was violative of the First Amendment because "the
continued employment of an assistant public defender cannot properly be conditioned upon his
allegiance to the political party in control of the county government."  <u>Id.</u> at 519.  The Second
Circuit in <u>Schnabel</u> stated that <u>Branti</u> "implicitly [found] that a public defender is a state actor
when making hiring and firing decisions on behalf of the state." 232 F.3d at 87.  <u>Schnabel</u> then
expressly "reaffirm[ed] the validity of our conclusion in <u>Lefcourt</u> and <u>Graseck</u> that a legal aid
society ordinarily is not a state actor amenable to suit under § 1983." 232 F.3d at 87.  <u>Schnabel</u>
distinguished <u>Branti</u> from cases involving private legal services providers based on the "lack of
government control or interference with" their affairs, notwithstanding their reliance on

government funding.  232 F.3d at 87.[3]  Plaintiffs do not rely on Branti, and the distinctions

highlighted by Schnabel govern here.

    Plaintiffs point out that their claims are not premised on the performance of Legal

Aid attorneys in their representation of clients, as was the case in Polk County, and that Polk

County acknowledged that in some circumstances public defenders could potentially be

classified as state actors under section 1983.  (See ECF 32 at 11-13.)  But the claims in Lefcourt,

Schnabel and Graseck related to plaintiffs who asserted that they were unlawfully discharged by

a legal services provider, and each decision concluded that plaintiffs had not demonstrated or

alleged that the defendant performed a traditional, exclusive government function.  Here,

plaintiffs' claim similarly relates to Legal Aid's conduct as a private employer and its decision to

enter into the CBA with the ALAA.  Absent a viable factual allegation of state oversight or

supervision over the terms of employment of its employee-lawyers, Lefcourt, Schnabel and

Graseck support the conclusion that Legal Aid is not performing a traditional, exclusive public

function when it enters into a CBA with a bargaining unit such as the ALAA, which did not

prohibit the collection of fees from non-union members.

    Plaintiffs' sole basis for urging that Legal Aid is a state actor asserts that

providing representation of indigent criminal defense is a core government function (Compl't ¶¶

39, 42), but Polk County, Lefcourt and related authorities all held that even when funded by

public sources, representing an indigent criminal defendant is traditionally a private function, one

that does not render the public defender a state actor.  While plaintiffs' claim is not directed to

attorney performance in representing indigent defendants, as in Polk County, it is nevertheless

---

[3] Branti has been narrowly applied to hold that political affiliation may be an appropriate requirement when there is
a rational connection between shared ideology and job performance, "because a literal reading of [Branti's]
language would exempt very few positions from First Amendment protection."  Vona v. County of Niagara, 119
F.3d 201, 207 (2d Cir. 1997).

grounded in a theory of state action rejected by the Supreme Court and the Second Circuit. Plaintiffs do not plausibly allege that Legal Aid or ALAA are state actors or explain why circumstances specific to this case make them amenable to suit under section 1983.

Plaintiffs also cite Harris v. Quinn, 573 U.S. 616 (2014), which pre-dates Janus, for the principle that state-law labels are not outcome-determinative.  (Compl't ¶¶ 36-37.)  Harris reviewed an Illinois law that required the state's home health care aides to join a union for the purpose of engaging in collective bargaining negotiations with the state, even though state law separately defined such aides as employees of the persons to whom they provided care.  Id. at 624.  Aides also were deemed public employees but only for the purpose of being covered by state labor law.  Id. at 625.  The Supreme Court explained in detail that aides did not have the protections or duties afforded "full-fledged" state employees and were deemed state employees only for a narrow form of collective bargaining.  Id. at 638-45.  In this circumstance, Harris held that plaintiffs' First Amendment speech and associational protections were violated by being compelled to pay dues to a collective bargaining agent, a union, that espoused views they did not endorse.  Id. at 647-51.[4]

The considerations at issue in Harris are not present here.  The Complaint describes Legal Aid as a private employer setting conditions of employment independent from the City, stating that the City "knew, or should have known, that federal law allows private employers to require their employees to pay union dues as a condition of employment," meaning

---

[4] Plaintiffs also rely on Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir. 1985), and West v. Atkins, 487 U.S. 42, 54-57 (1988), which held that a private contractor providing medical services to county inmates performed a traditionally exclusive state function.  In West, the Supreme Court explained that a state's exercise of its exclusive power to punish a person by incarceration renders a prison's contract physician a state actor for purposes of a deliberate indifference claim, noting that "the dispositive issue concerns the relationship among the State, the physician, and the prisoner."  See id. at 56.  Such a physician "is possessed of state authority and purports to act under that authority . . . ."  Id. at 56 n.15 (quotation marks omitted).  By contrast, Polk County and its progeny in this Circuit have consistently concluded that legal aid societies do not operate pursuant to state authority, and no state authority or oversight is identified in the Complaint.

that "the City knew" that Legal Aid's criminal defense attorneys "would be required to pay money to the ALAA as a condition of providing criminal defense representation for the City." (Compl't ¶¶ 41-42.)  Unlike <u>Harris</u>, plaintiffs point to no state or City law classifying Legal Aid employees as employees of the City, and no law that compels plaintiffs or other Legal Aid employees to join the ALAA or requires Legal Aid to enter into a CBA with any labor union. Section 6.03 of the agreement between Legal Aid and the City provides "that neither the City nor the [Mayor's Office of Criminal Justice] is responsible or shall be liable for any obligations" contained in any CBA.  (ECF 30-1.)  There is no allegation that the City directs the terms and conditions of employment for lawyers employed by Legal Aid or the rights and obligations of bargaining-unit members of the ALAA.

The Complaint also states: "Here, in substance, Defendants' hiring of Plaintiffs through [Legal Aid], which required them to be part of ALAA, constitutes state action." (Compl't ¶ 43.)  But the Complaint fails to allege how plaintiffs' hiring could be "fairly attributed to the state."  <u>Grogan</u>, 768 F.3d at 264.  It does not describe how the hiring of Levine and Popper or the entry into a CBA between Legal Aid and the ALAA touch on a traditional, exclusive state function.  The conclusory assertion that "Defendants" hired Levine and Popper does not plausibly allege that all three defendants were involved in plaintiffs' hiring, as opposed to Legal Aid alone.  Section 6.04(B)(1) of the agreement between the City and Legal Aid provides that "[Legal Aid] shall be responsible for the recruitment and screening of employees and volunteers performing work under the Agreement . . . ."  (ECF 30-1.)  The agreement also requires that, if directed by the Mayor's Office of Criminal Justice, Legal Aid "will undertake the fingerprinting of employees and volunteers . . . ."  (<u>Id.</u>)  This fingerprinting requirement does

not make it more plausible that Legal Aid performed a traditional, exclusive government

function when it hired plaintiffs, or that the City had input on their hiring.

   The Complaint does not show facts that plausibly support an allegation that Legal

Aid and ALAA are state actors who are amenable to suit under section 1983.  Their motion to

dismiss will therefore be granted.

   II.  <u>The Complaint Does Not Plausibly State a Claim Against the City.</u>

   For the reasons largely explained, the Complaint does not plausibly state a claim

for relief against the City.  Unlike Legal Aid and the ALAA, the City is amenable to suit under

section 1983 as a state actor, but the Complaint does not allege facts that attribute any role to the

City in the formation or terms of the CBA, the hiring of Levine and Popper or the statements of

the ALAA.  As discussed, the contract between the City and Legal Aid to provide for the

representation of indigent defendants provides that the City is not responsible for any obligations

under any CBA and that Legal Aid is responsible for recruitment of employees performing work

under the contract.  (<u>See</u> ECF 30-1.)  Because the Complaint does not plausibly allege a First

Amendment claim against the City, its motion to dismiss will be granted.

   III.  <u>The Court Will Direct Entry of Judgment.</u>

   Legal Aid, the ALAA and the City all filed pre-motion letters setting forth the

bases of their anticipated motions to dismiss.  (ECF 22, 23, 24.)  Legal Aid's pre-motion letter

was five single-spaced pages in length, and the letters of the ALAA and the City were both three

single-spaced pages.  (<u>See</u> <u>id.</u>)  Having had the opportunity to review the grounds for defendants'

anticipated motion, plaintiffs elected not to amend the Complaint, stating: "Plaintiffs agree that a

fundamental question in this case is whether there is state action but disagree with Defendants'

assertions that no state action exists in this case.  Therefore, **Plaintiffs do not seek leave to amend their Complaint**."  (ECF 25 at 2; emphasis in original.)

As required by Rule 16(b)(3)(A), Fed. R. Civ. P., the Court then issued a Scheduling Order on the motion to dismiss and any amendments to the Complaint, directing in part: "The Court hereby limits the time to amend or move to amend to the later of the following: (a) the date to amend as of right under Rule 15, Fed. R. Civ. P.; or (b) 21 days from the filing of the motion to dismiss."  (ECF 26.)  Plaintiffs made no application to amend within this time and plaintiffs' response to the motion to dismiss did not request leave to amend.  Accordingly, the Court will direct entry of judgment.  See Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000).

CONCLUSION.

The motion to dismiss is GRANTED.  (ECF 28.)  The Clerk is respectfully directed to terminate the motion, enter judgment for defendants and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 30, 2025